1

2

3

4

5

6

7

8                           IN THE UNITED STATES DISTRICT COURT

9                          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   MATT BUTLER,                                No. C06-03619 MJJ

12              Plaintiff,                       **ORDER DENYING PLAINTIFF'S**
                                                 **MOTION FOR SUMMARY JUDGMENT**
13      v.

14   CLARENDON AMERICA INSURANCE CO.,

15              Defendant.
     _____/

16

17                                 **INTRODUCTION**

18         Before the Court is Plaintiff Matt Butler d.b.a. San Rafael Yacht Harbor's ("Plaintiff")

19   Motion for Partial Summary Judgment.[1]  Defendant Clarendon America Insurance Company

20   ("Defendant" or "Clarendon") opposes the motion.  In its opposition brief, Defendant does not

21   formally move for summary judgment, but instead requests an Order stating there is no potential for

22   coverage under the relevant insurance policies.[2]  For the following reasons, the Court **DENIES**

23   Plaintiff's Motion for Summary Judgment.[3]

24

25   _____

26        [1]Docket No. 27.

27        [2]Docket No. 33.

28        [3]Defendant does not properly move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure
     and the applicable Local Rules.  At the hearing in this matter, the Court inquired as to the meaning of Defendant's request.
     Defendant's counsel explained that Defendant has not yet moved for summary judgment and that all Defendant intended by
     the request was that the Court "deny [Plaintiff's] motion for summary judgment."

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1

**FACTUAL BACKGROUND**

2      The instant action presents an insurance dispute between the insured Plaintiff and the insurer

3  Defendant arising from Defendant's refusal to defend Plaintiff in an underlying third-party lawsuit.

4  Except as otherwise indicated, the Court finds the following facts to be undisputed.

5  **I.      The Underlying Action**

6      Plaintiff is the operator of the San Rafael Yacht Harbor in San Rafael, California.  On

7  February 12, 2004, Pro se litigant Lloyd Victor Ramirez ("Ramirez") filed the first action against

8  Plaintiff in the United States District Court for the Northern District of California, Case No. C04-

9  0593 EMC.  (Joint Statement of Undisputed Fact ("JSUF") at ¶ 4.)  On February 18, 2004, Ramirez

10  filed the second action against Plaintiff in the Superior Court of California, County of Marin, Case

11  No. CV040728.  (*Id*. at 3.)  These actions (collectively "the Ramirez action"), made identical

12  allegations and claims against Plaintiff.  (*Id*. at ¶¶ 3, 4.)[4]

13      Ramirez alleged that he was the owner of two vessels and Plaintiff's tenant at the San Rafael

14  Yacht Harbor.  (*Id*. at ¶¶ 3, 4.)  According to Ramirez, a dispute arose between Ramirez and Plaintiff

15  concerning fees and charges for berthing and other services, and as a result the dispute Ramirez

16  elected to move his vessels from the San Rafael Yacht Harbor to the Loch Lomond Marina on

17  February 10, 2003.  (*Id*.)  In his complaint, Ramirez alleged that on February 18, 2003, Plaintiff

18  "improperly, unlawfully, and without the knowledge and consent and contrary to the desire and

19  instructions of [Ramirez], converted [the two] vessels, trespassed thereon, and sold, disposed or

20  converted them to [Plaintiff's] own use" and that "[Ramirez], the true and lawful owner of [the]

21  vessels . . . and that [Plaintiff] did not have any legal title to [the] vessels.  (*Id*.)  Ramirez further

22  alleged that Plaintiff "improperly, unlawfully, and without the knowledge and consent of [Ramirez],

23  converted, sold or otherwise disposed of the personal property of [Ramirez], including boat tackle,

24  spare parts and gear, accessories and equipment, and other personal belongings, including but not

25  limited to clothing, and visual equipment and numerous other items."  (*Id*.)  According to Ramirez,

26  he sustained injury and damage "by losing his principle place of abode, all to his great physical and

27

28      [4]On June 3, 2004, the Court granted Defendants' Motion to Dismiss the first action.  (Case No. 04-0593EMC, Docket No. 29.)

1  emotional distress . . . ."  (*Id.*)  Ramirez also alleged that Plaintiff's conduct "was intentional and

2  deceitful with the intention of causing injury to [Ramirez]."  (*Id.*)  Ramirez asserted claims for: (1)

3  possession of the vessels and damage for wrongful taking against Plaintiff; and (2) violation of

4  privacy against Pat Lopez ("Lopez") and Loch Lomond Marina for releasing information regarding

5  the location of Ramirez's vessels to Plaintiff.  (*Id.*)[5]

6  **II.     The Policies**

7         Defendant had previously issued two insurance policies to Plaintiff for periods of August 4,

8  2001 to August 4, 2002 and August 4, 2002 to August, 4, 2003.  (collectively, "the policy") (*Id.* at ¶¶

9  1, 2.)  The policy provided coverage for "bodily injury" or "property damage" caused by an

10 "occurrence" which is defined in the policy as an "accident."  The relevant "Commercial General

11 Liability" ("CGL") sections of the policy provided, in part:

12        SECTION I – COVERAGES

13        COVERAGE A.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY

14                1.    Insuring Agreement.
                        a.    We will pay those sums that the insured becomes legally obligated to
15                            pay as damages because of "bodily injury" or "property damage" to
                              which the insurance applies.  We will have the right and duty to
16                            defend and "suit" seeking those damages. . . .
                        b.    This insurance applies to "bodily injury" and "property damage" only
17                            if:
                              (1)    The "bodily injury" or "property damage" is caused by an
18                                   "occurrence" that takes place in the "coverage territory," and
                              (2)    The "bodily injury" or "property damage" occurs during the
19                                   policy period.
                        . . .
20
                2.    Exclusions.
21                    This insurance policy does not apply to:
                        a.    "Bodily injury" or "property damage" expected or intended from the
22                            standpoint of the insured.  This exclusion does not apply to "bodily
                              injury" resulting from the use of reasonable force to protect persons or
23                            property.

24                    . . .

25        SECTION V – DEFINITIONS

26                3.    "Bodily injury" means bodily injury, sickness or disease sustained by a
                       person, including death resulting from any of these at any time.

27

28        _____

                 [5]Neither Pat Lopez or Loch Lomond Marina are insured by Defendant.

                                                3

United States District Court
For the Northern District of California

1              . . .

2      9.     "Occurrence" means an accident, including continuous or repeated exposure
              to substantially the same general harmful conditions.

3              . . .

4      12.    "Property damage" means:
5             a.    Physical injury to tangible property, including all resulting loss of use
                    of that property.  All such loss of use shall be deemed to occur at the
6                   time of the physical injury that caused it; or
              b.    Loss of use of tangible property that is not physically injured.  All
7                   such loss shall be deemed to occur at the time of the "occurrence" that
                    caused it.
8
9      13.    "Suit" means a civil proceeding in which damage because of "bodily injury,"
              "property damage," "personal injury" or "advertising injury" to which this
              insurance applies are alleged. . . .
10

11     (*Id.* at ¶¶ 1 and 2; MB000072-MB000080, MB000157-MB000168.)

12          The policy contained two additional relevant "special coverage" sections.  First, on the Form

13     HBDC, the policy contained "Special Boat Dealer/Marina Coverage" and provided, in part:

14          1.     PROPERTY AND INTEREST INSURED:

15     This policy insures BUSINESS PERSONAL PROPERTY (including Tenant's
       Improvement and Betterments as provided herein), usual to the conduct of the
16     Insured's business, the property of the Insured or the property of others in the actual
       or constructive custody of the insured.
17
            . . .
18
            7.     PERILS INSURED:
19
20     The property insured is covered against all risk of direct physical loss or damage
       except as hereinafter excluded.
21
            . . .
22
            21.    PROPERTY OF OTHERS:
23
       In the case of loss or damage to property of others held by the Insured, for which the
24     Insured is liable, the rights to adjust such loss or damage with the owner of the
       property is reserved to the company, and receipt or release from owner in satisfaction
25     thereof shall be in full satisfaction of any claim of the Insured.  If legal proceeding be
       taken to enforce a claim against the Insured, to conduct and control the defense on
26     behalf of and in the name of the Insured.  No action of the company in such regard
       shall increase the liability of the Company under the policy.

27     (*Id.*, MB000175-MB000180.)  Second, on the Form HMOL, the policy contained "Special

28     Marina/Boat Repairers/Boat Dealers Legal Liability" and provided, in part:

United States District Court

For the Northern District of California

1         1.      In consideration of the premium and subject to the limits of liability, exclusions, conditions and other terms of the policy, this Company agrees to pay on behalf of the insured, all sums which the insured shall become obligated to pay by reason of the liability imposed upon him (them) by law for loss of or damage to watercraft, their motors, equipment and boat trailers; the property of others while in his (their) care, custody or control at the premises . . . for any of the operations listed below:

. . .

      (F)     Property of others held for sale.

. . .

    6.      This Company agrees to indemnify the Insured to the extent of this policy's proportion of legal costs or fees or expenses of counsel occasioned by the defense of any claim against the Insured for any liability or alleged liability of the Insured covered by this policy, provided that such costs, fees or expenses are incurred with the prior written consent of this Company.  The Company shall have the option of naming attorneys to represent the Insured in the defense of any claim insured hereunder, made against the Insured, and this Company may exercise exclusive direction and control of the said defense. . . .

(*Id*., MB000189-MB000191.)

**III.     Plaintiff's Tenders**

On March 10, 2004, Plaintiff first tendered the Ramirez actions to Defendant requesting Defendant to defend and indemnify him.  (*Id*. at ¶ 5.)  In his tender letter, Plaintiff described his participation in the events leading up to the Ramirez actions.  (*Id*.)  Plaintiff explained that Ramirez was often late in paying rent and that in December 2002, Plaintiff hauled Ramirez's vessels from the water for rent amounts owed.  (*Id*.)  According to Plaintiff, in early February 2003 he launched the vessels after Ramirez had written two checks for rent amounts owed.  (*Id*.)  Plaintiff claims that Ramirez's rent checks were returned marked account closed, and that Plaintiff chained Ramirez's vessels to the dock.  (*Id*.)  Plaintiff explained that he had obtained liens on the vessels and proceeded to notify Ramirez.  (*Id*.)  Plaintiff stated that in mid-February 2003, Ramirez cut the chains and removed one of his vessels to Loch Lomond Marina, approximately 1.5 miles away.  (*Id*.)  Plaintiff proceeded to locate the vessel, return it to San Rafael Yacht Harbor, and haul it from the water.  (*Id*.)  Plaintiff then filed a small claims case for the amounts owed.  (*Id*.)  On April 7, 2003, the small claims court commissioner awarded judgment to Plaintiff and authorized Plaintiff to sell the vessels pursuant to his statutory lien.  (*Id*.)  On March 29, 2004, Defendant's claims adjustor denied

1   Plaintiff's tender of defense and request for indemnity.

2          Plaintiff proceeded to make a series of re-tenders to Defendant regarding the Ramirez action.

3   Plaintiff made a second tender to Defendant in a March 3, 2005 letter.  (Declaration of Barbara Hall

4   ("Hall Decl.") Ex. H.)  On March 10, 2005, Defendant informed Plaintiff there was no change

5   regarding coverage on the Ramirez action, but that Defendant would re-evaluate coverage if an

6   amended complaint was filed. (*Id.* Ex. I.)  On June 14, 2005, Plaintiff made a third tender to

7   Defendant and enclosed a copy of Ramirez's proposed amended complaint.  (*Id.* Ex. J.)  Defendant

8   again informed Plaintiff that there was no change in its position regarding coverage of the Ramirez

9   action.  (*Id.* Ex. K.)  On November 10, 2005, Plaintiff made a fourth tender to Defendant, which was

10  denied on February 21, 2006.  (*Id.* Exs. L, M.)

11  **IV.     Procedural History**

12          On March 9, 2006 and December 8, 2006, Plaintiff filed a complaint and an amended

13  complaint, respectively, against Defendant.  Plaintiff seeks declaratory relief, damages for breach of

14  contract, damages for negligence for declining to defend or indemnify Plaintiff, damages for breach

15  of the implied covenant of good faith and fair dealing, and damages for breach of fiduciary duty.

16  Plaintiff now seeks an order granting Plaintiff partial summary judgment on grounds that Defendant

17  had a duty to defend Plaintiff in the Ramirez action, and that Defendant breached the policy by

18  refusing to defend Plaintiff in the Ramirez action.  In its opposition, Defendant seeks an order that

19  there is no potential for coverage in the Ramirez action under the policy.

20                                      **LEGAL STANDARD**

21          Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if there is

22  no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

23  law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears the

24  initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings,

25  depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence

26  of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving

27  party meets this initial burden, the burden then shifts to the non-moving party to present specific

28  facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324;

**United States District Court**
For the Northern District of California

6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment.  *Id.* at 247-48.  An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute might affect the case's outcome.  *Anderson*, 477 U.S. at 248.  Factual disputes are genuine if they "properly can be resolved in favor of either party."  *Id.* at 250.  Thus, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor.  *Id.*  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.* at 249-50 (internal citations omitted).

## ANALYSIS

### I.     Duty to Defend

The issue presented in this action is whether, as a matter of law, the Ramirez action falls within the policy thereby triggering Defendant's duty to defend Plaintiff.  Plaintiff contends that Defendant's duty to defend is evident by comparing the face of the complaints in the Ramirez action to the relevant sections of the policy.  Plaintiff points to three sections of the policy: (1) the CGL section; (2) the Form HBDC – "Special Boat Dealer/Marina Coverage" section; and (3) the Form HMOL – "Special Marina/Boat Repairers/Boat Dealers Legal Liability" section.  Defendant disagrees and insists there is no potential for coverage under the policy because there was no "accident" triggering coverage, and because the policy excludes the "intended or expected" acts of the insured.  Defendant also argues that California Insurance Code, Section 533 precludes the potential for coverage as a matter of law by reason of the insured's actions having been deliberate, intentional, and willful.

In California, a liability insurer "owes a broad duty to defend its insured against claims that create a potential for indemnity."  *Montrose Chem. Corp. v. Super. Ct.*, 6 Cal. 4th 287, 295 (1993) (quoting *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263 (1966)).  The potential for coverage may arise from the underlying complaint, the terms of the policy, possible amendments to the complaint, or any other extrinsic evidence known to the insurer which would give rise to liability under the policy, even if coverage is ultimately found lacking.  *Id.* at 295, 299-300; *Gray*, 65 Cal. 2d at 276 (reasoning

7

United States District Court
For the Northern District of California

1    that facts known to the insurer and extrinsic to the third party complaint can generate a duty to

2    defend, even though the face of the complaint does not reflect a potential for liability under the

3    policy because pleading rules liberally allow amendment and the third party plaintiff cannot be the

4    arbiter of coverage).  Once the duty to defend attaches, "the insurer is obligated to defend against all

5    of the claims involved in the action, both covered and noncovered."  *Horace Mann Ins. Co. v.*

6    *Barbara B*., 4 Cal. 4th 1076, 1081 (1993).  The insurer's duty to defend arises on tender of defense

7    and lasts until it can conclusively show that there is no potential for coverage.  *Montrose*, 6 Cal. 4th

8    at 295.

9         Initially, the burden is on the insured to make a prima facie showing that the third-party

10   claim potentially falls within the insuring provisions of the policy.  *Aydin Corp. v. First State Ins.*

11   *Co.*, 18 Cal. 4th 1183, 1188 (1998); *Anthem Electronics, Inc. v. Pacific Employers Ins. Co.*, 302 F.3d

12   1049, 1059, n.3 (9th Cir. 2002) (applying California law).  The burden then shifts to the insurer to

13   show conclusively that the damages sought by the third party claimant were not covered under the

14   policy.  *See Montrose*, 6 Cal. 4th at 304.  When the potential for liability depends on a disputed

15   factual question, the very existence of that dispute would establish a possibility of coverage and thus

16   a duty to defend.  *See Horace Mann Ins. Co.*, 4 Cal. 4th at 1085.  However, when the potential for

17   liability  is eliminated by undisputed facts, extrinsic to the complaint, there is no duty to defend.

18   *Montrose*, 6 Cal. 4th at 300–301; *Uhrich*, 109 Cal App. 4th at 611.  Similarly, when the potential for

19   liability does not arise from disputed facts but rather "hinge[s] on resolution of a legal question,"

20   there is no duty to defend pending the resolution of the question.  *A-Mark Fin. Corp. v. CIGNA*

21   *Prop. & Cas. Cos*., 34 Cal. App. 4th 1179, 1192 (1995).

22        Any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer.

23   *Vann v. Travelers Cos*., 39 Cal. App. 4th 1610, 1615 (1995); *Montrose*, 6 Cal. 4th at 299-300.  The

24   insurer "has a duty to defend when the policy is ambiguous and the insured would reasonably expect

25   the insurer to defend against the suit based on the nature and kind of risk covered by the policy."

26   *Foster-Gardner, Inc. v. National Union Fire Ins. Co.*, 18 Cal. 4th 857, 869 (1998); *Gray*, 65 Cal. 2d

27   at 270; *Uhrich*, 109 Cal. App. 4th at 622.  On the other hand, if there is no ambiguity or uncertainty

28   in the coverage provisions, the insured cannot "reasonably" expect a defense.  *B & E Convalescent*

*Ctr. v. State Comp. Ins. Fund*, 8 Cal. App. 4th 78, 99-100 (1992); *Ananda Church of Self-Realization v. Massachusetts Bay Ins. Co.*, 95 Cal. App. 4th 1273, 1280 (2002); *Uhrich*, 109 Cal. App. 4th at 622.

On a motion for summary judgment on the insurer's duty to defend, the insurer must be able to negate coverage as a matter of law. *Maryland Cas. Co. v. National American Ins. Co. of Calif.*, 48 Cal. App. 4th 1822, 1832 (1996). However, any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor. *Horace Mann Ins., Co.*, 4 Cal. 4th at 1081.

The Court now turns to the relevant policy provisions.

**A.      Commercial General Liability Provision – "Accident"**

Pointing to the CGL policy, Plaintiff argues that the Ramirez action created a "potential" for the existence of an "accident" that caused "bodily injury." First, Plaintiff argues that Ramirez's allegation that Plaintiff is liable for the actions of third-parties Lopez and the Loch Lomond Marina, involves an "unexpected, unforeseen or undesigned happening from a known or unknown cause," and therefore sufficiently alleges an "accident" under the policy. Second, Plaintiff argues that Ramirez's allegation that he suffered "great physical and emotional distress," sufficiently alleges "bodily injury" under the policy. Plaintiff insists that these allegations create questions of fact and thereby create a potential for coverage.

Defendant argues that Plaintiff has failed to meet his initial burden of showing an "accident" under the policy. Defendant insists that an "accident" is never present when the insured performs a deliberate act unless some "additional, unexpected, independent, and unforeseen happening occurs that produces the damage." *St. Paul Fire & Marine Ins. Co. v. Super. Ct.*, 161 Cal. App. 3d 1199, 1202 (1984)). According to Defendant, because there was no additional happening, there can be no accident and no potential for coverage. Finally, Defendant relies on California Insurance Code section 533 and argues that coverage is precluded by Plaintiff's intentional acts towards Ramirez.

The Court finds Plaintiff's interpretation of the CGL policy to be problematic because it does not withstand scrutiny when analyzed under pertinent California law. The Court now turns to the issue of whether there exists an "occurrence" or "accident" on the factual record before the Court.

Coverage under the CGL policy is triggered by the insured's obligation to pay damages

because of "bodily injury" or "property damage" that is caused by an "occurrence."  (JSUF ¶ 2 at MB000157.)  The policy defines "occurrence" as an "accident."  (*Id.* at MB000165.)  Accordingly, the policy is triggered when an "accident" causes "bodily injury" or "property damage."  Although the term "accident" is not defined in the policy, courts have consistently defined the term to require unintentional acts or conduct.  *Ray v. Valley Forge* Ins., 77 Cal. App. 4th 1039, 1045 (1999) (citing *Collin v. American Empire Ins. Co.*, 21 Cal. App. 4th 787, 806 (1994); *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal. App. 4th 715, 750 (1993); *Merced Mutual Ins. Co. v. Mendez*,  213 Cal. App. 3d 41, 50 (1989)).  The plain meaning of the word "accident" is an event occurring unexpectedly or by chance.  *Id.* (citing *St. Paul Fire & Marine Ins. Co.*, 161 Cal. App. at 1202).

Whether the insurer or the insured bears the burden of proof as to "intentional injury" versus "accidental injury" is unsettled.  Hon. H. Walter Croskey, *et al.*, *California Practice Guide: Insurance Litigation* § 7:247 (Rutter Guide 2006).  Some courts have held that where liability is limited to "accidental" occurrences, the insured bears the burden of proving the third party's injury falls within the scope of coverage; *i.e.*, that the injury was neither "expected nor intended" from the standpoint of the insured.  *Id.* at § 248 (citing *Royal Globe Ins. Co. v. Whitaker*, 181 Cal. App. 3d 532, 537 (1986)).  Other courts have reasoned that "injury expected or intended" is in effect an exclusion upon which the insurer bears the burden of proof.  *Id.* at § 249 (citing *Clemco Industries v. Commercial Union Ins. Co.*, 665 F. Supp. 816, 820 (N.D. Cal. 1987); *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1557 (9th Cir. 1991)).

In the current case, the insuring clause of the CGL policy states that it only covers accidents.  (JSUF ¶ 2 at MB000157.)  However, the exclusionary clause of the CGL policy states that it excludes injury that is "expected or intended" by the insured.  (*Id.*)  Because the CGL policy expressly excludes intentional conduct, this Court finds that it is appropriate for  Defendant to bear the burden of proof on whether the alleged injury was a result of an "accident."

Here, Defendant has presented sufficient evidence to establish that the alleged injury in the Ramirez action was a product of Plaintiff's intentional conduct, and therefore not an "accident."

United States District Court

For the Northern District of California

1    The evidence considered[6] by Defendant included the content of Ramirez's complaints and the tender

2    letters from Plaintiff.  An examination of the complaints in the Ramirez action reveals that the

3    claimed bodily injuries were allegedly caused by Plaintiff's intentional conduct of trespassing,

4    selling, and converting the vessels and personal property.  (JSUF ¶¶ 3-4, Ramirez Complaints at ¶¶

5    11, 12, 15.)  An examination of Plaintiff's initial tender letter similarly reveals the absence of an

6    "accident."  In his letter, Plaintiff admitted that he had chained Ramirez's vessels to the dock after

7    having Ramirez's rent check returned marked account closed.  (*Id*. at ¶ 5.)  Upon discovering that

8    the chain had been cut and that one of Ramirez's vessels had been moved, Plaintiff admitted to

9    locating the missing vessel at Loch Lomond Marina, returning it to the San Rafael Yacht Harbor,

10   and hauling it from the water.  (*Id*.)[7]  All the available evidence suggest that Plaintiff's actions were

11   "intentional."  Because, the facts known to Defendant before it declined to defend eliminated the

12   potential for coverage, the Court concludes that Defendant had no duty to defend Plaintiff in the

13   Ramirez action under the CGL policy.

14        Other courts have found that similar intentional acts by an insured do not constitute an

15   "accident" within the meaning of comparably-worded insurance policies.  *See e.g. Commercial*

16   *Union Ins. Co. v. Super. Ct.*, 198 Cal. App. 3d 1205 (1987) (finding that under a similar policy, the

17   insured's act of terminating an employee was intentional and therefore not an "accident," and hence

18   not an "occurrence" triggering a duty to defend); *Ray v. Valley Forge Ins. Co.*, 77 Cal. App. 4th

19   1039 (1999) (finding where policy covered damage caused by an "occurrence" which was defined as

20

21   [6]The insurer must consider facts from any source in determining its duty to defend. Hon. H. Walter Croskey, *supra*
22   at § 7:581 (citing *Montrose*, 6 Cal. 4th at 298-99).  "It is a settled rule that the insurer must look to the facts of the complaint
     and extrinsic evidence, if available, to determine whether there is a potential for coverage under the policy and a
23   corresponding duty to defend." *Foster-Gardner, Inc. v. National Union Fire Ins. Co.*,18 Cal. 4th 857, 880 (1998); *El-Com
     Hardware, Inc. v. Fireman's Fund Ins. Co.*,  92 Cal. App. 4th 205, 217 (2001).  An insured may create a duty to defend
24   simply by communicating facts to the insurer that, if true, would establish the existence of coverage. *Id.* at § 7:582 (citing
     *Amato v. Mercury Cas. Co.*, 18 Cal. App. 4th 1784, 1792 (1993)). Conversely, no duty to defend is owed when the insured's
25   own statement of facts, together with other information known to the insurer, shows there is no possibility of coverage. *Id.*
     at § 7:582.1 (citing *Safeco Ins. Co. of America v. Parks*, 122 Cal. App. 4th 779, 793-94 (2004); *Ace American Ins. Co. v.
26   Walker*, 121 Cal. App. 4th 1017, 1025 (2004)).

27   [7]Plaintiff also explained that he filed a small claims case for the amounts owed. (*Id.*) On April 7, 2003, the small
     claims court commissioner awarded judgment to Plaintiff and authorized Plaintiff to sell the vessels pursuant to his statutory
28   lien. (*Id.*) However, the issue before the Court is not whether Plaintiff's actions in seizing the vessels and allegedly selling
     them and their contents was permissible.  Rather the issue before the Court is whether Plaintiff's actions and the alleged
     resulting injuries were covered events under the policy.

United States District Court

For the Northern District of California

1  an "accident," did not trigger insurer's duty to defend where complaint alleged intentional conduct

2  on the part of the insured); *Swain v. Calif. Casualty Ins. Co.*, 99 Cal. App. 4th 1 (2002) (finding

3  where policy defined "occurrence" as an "accident resulting in bodily injury or property damage,"

4  the insured landlord's act of evicting tenants was not an "occurrence" triggering the insurer's duty to

5  defend landlord in tenant's underlying wrongful eviction suit); *Collin v. Am. Empire Ins.*, 21 Cal.

6  App. 4th 787 (1994) (finding homeowner plaintiff's claim for conversion of personal property

7  against contractor's liability insurer did not arise from an "accident").

8      Plaintiff argues that there is evidence of an "accident" occurring by way of Ramirez's

9  allegations that Plaintiff is liable for the conduct of Lopez and the Loch Lomond Marina.  In

10  particular, Plaintiff avers that the conduct of Lopez and the Loch Lomond Marina involved an

11  "unexpected, unforeseen or undesigned happening from a known or unknown cause."  (*See* JSUF ¶¶

12  3-4, Ramirez Complaints at ¶¶ 19-21.)  The Court disagrees.  The Ramirez complaints do not allege

13  any potential theory for Defendant to be liable for the acts of Lopez and Loch Lomond Marina.

14  Neither does Plaintiff provide sufficient explanation or legal authority as to how the Lopez/Loch

15  Lomond Marina allegations would constitute an "accident" under the GCL policy.

16      Both the complaints in the Ramirez action, and the available extrinsic evidence, present

17  nothing more than Plaintiff's intentional acts.  Because the GCL policy requires an "occurrence" for

18  coverage, and because the policy defines "occurrence" as an "accident," there was no event

19  triggering Defendant's duty to defend.[8]

20      **B.      Special Coverage Provisions**

21      In a further attempt to establish Defendant's duty to defend, Plaintiff relies on two special

22  coverage provisions of the policy: (1) the Form HMOL – "Special Marina/Boat Repairers/Boat

23  Dealers Legal Liability" (hereafter, "Special Marina provision"); and (2) the Form HBDC – "Special

24  Boat Dealer/Marina Coverage" (hereafter, "Special Boat Dealer provision").  Plaintiff contends that

25  _____

26      [8]Defendant also argues that California Insurance Code § 533 excuses an insurer from providing coverage when the
insured acted intentionally.  Plaintiff contends that section 533 applies only to an insurer's duty to indemnify, and not to an

27  insurer's duty to defend, and is therefore not applicable.  *See Horace Mann Ins. Co.*, 4 Cal. 4th at 1087.

      Section 533 prohibits indemnification, *not defense*, of intentional tort claims.  Hon. H. Walter Croskey, *supra* §

28  7:531.  In this case, the issue is whether Defendant had a duty to *defend*, not whether Defendant had a duty to *indemnify*.
Accordingly, section 533 is of no consequence on the record before the Court.

United States District Court

For the Northern District of California

1    because the Special Marina provision provides coverage for "property of others held for sale,"

2    Plaintiff's conduct of selling Ramirez's vessels and personal property gives rise to coverage.  Next,

3    Plaintiff contends that because the Special Boat Dealer provision provides coverage for "all risk of

4    direct physical loss or damage," Plaintiff's alleged conduct of trespassing and disposing of

5    Ramirez's vessels gives rise to coverage.

6         Defendant argues that Plaintiff's interpretation of both provisions is incorrect for multiple

7    reasons.  As to the Special Marina provision, Defendant contends: (1) the provision is for indemnity

8    only, with no duty to defend; (2) the provision is subject to the same terms and conditions as the

9    CGL policy requiring there to have been "accident"; and (3) the provision does not apply because

10   the vessels at issue were never entrusted to Plaintiff for the "purpose of sale."  As to the Special Boat

11   Dealer provision, Defendant contends: (1) the provision is for first-party property damage only, and

12   is not a liability policy; (2) the provision provides no duty to defend against third-party claims.

13        Insurance policies generally have two parts: (1) the insuring agreement which defines the

14   type of risks covered under the policy; and (2) the exclusions, which remove coverage for certain

15   risks which initially fall within the insuring clause.  *Rosen v. Nations Title Ins. Co.*, 56 Cal. App. 4th

16   1489, 1497, (1997).  Exclusions serve two purposes: They avoid coverage for risks the insurer elects

17   not to insure and limit coverage for risks normally covered by other insurance.  *Van Ness v. Blue*

18   *Cross of California*, 87 Cal. App. 4th 364, 374 (2001).  Most policy forms contain numerous

19   exclusions which limit or take away coverage provided by the insuring clause.  Croskey, *supra* §

20   3:127.  Some exclusions also have related exceptions which "give back" coverage taken away by the

21   exclusion.  *St. Paul Fire & Marine Ins. Co. v. Coss*, 80 Cal. 3d 888, 896, (1978).  Thus, the

22   exception's effect is "somewhat analogous to a coverage provision . . . . "  *National Union Fire Ins.*

23   *Co. v. Lynette C*., 228 Cal. App. 3d 1073, 1082 (1991).

24        There are different standards of interpretation for policy exclusions and exceptions.  An

25   exclusion is normally interpreted strictly so that any ambiguity therein will be resolved against the

26   insurer.  *Safeco Ins. Co. of America v. Robert S*., 26 Cal. 4th 758, 765–66 (2001).  To be given

27   effect, an exclusion must be "conspicuous and clear."  Croskey, *supra* § 3:139 (citing *North*

28   *American Bldg. Maintenance, Inc. v. Fireman's Fund Ins. Co.*, 137 Cal. App. 4th 627, 642 (2006)).

United States District Court
For the Northern District of California

1  Exceptions to exclusions are "somewhat analogous to coverage provisions" for purposes of policy

2  interpretation and therefore interpreted broadly in favor of coverage. *See National Union Fire Ins.*

3  *Co. v. Lynette C*., 228 Cal. App. 3d 1073, 1082 (1991).

4      The Court now turns to the Special Marina and Special Boat Dealer policy provisions.

5      **1.     Form HMOL – "Special Marina/Boat Repairers/Boat Dealers Legal Liability"**

6      In the current case, the Special Marina provision specifically provides that it is "subject to

7  the *limits of liability, exclusions, conditions and other terms of the policy . . . ."* (JSUF ¶¶ 1, 2 at

8  MB000111-MB000113 and MB000189-MB000191) (emphasis added). Initially, in examining the

9  insuring agreement, it is apparent that the Special Marina provision is subject to the limits of liability

10 and the condition requiring "bodily injury" or "property damage" caused by an "occurrence," which

11 is defined as an "accident."[9] (*Id*. at MB000072, MB000157.) Consistent with the insuring

12 agreement, the Special Marina provision directly refers to the terms "accident and "occurrence."

13 (*Id*. at MB000111-MB000113; MB000189-MB000191.) Next, in examining the applicable

14 exclusions in the policy, it is equally apparent that the policy specifically excludes "'property

15 damage' to . . . Personal property in the care, custody or control of the insured[.]" (*Id*. at MB000072-

16 MB000074; MB000157-MB000159.) This exclusion is conspicuously located in bold-faced type

17 beginning on the first page of the CGL provision. *See National Ins. Underwriters v. Carter*, 17 Cal.

18 3d 380, 384–85, (1976) (finding an exclusion was "conspicuous" where located in a section of the

19 policy under the bold face heading, "EXCLUSIONS," in print of the same size and density as the

20 rest of the policy). Therefore, the Court finds the Special Marina provision is subject to the same

21

22      [9]At the hearing in this matter, Plaintiff relied on the policy declaration page to argue that the Special Marina
provision cannot be "subject to the limits of liability, exclusions, conditions and other terms of the policy." In particular,
23 Plaintiff claimed that because the Special Marina provision was not specifically enumerated on the policy's declaration page,
it cannot be part of the policy, and therefore it cannot be subject to the same conditions and limitations set forth in the CGL
24 provision. Plaintiff argued that the CGL, the Special Marina, and the Special Boat Dealer provisions were three separate and
independent insurance policies, rather than part of a single policy. The Court finds Plaintiff's position here unpersuasive.
Nothing in the policy suggests that these provisions constitute separate independent insurance policies. Rather, the Special
25 Marina provision's reference to other "limits of liability, exclusions, conditions and [ ] terms of the policy" can only be in
reference to the enumerated exclusions, conditions, and terms set forth in the CGL provision.
26
        In response, Defendant argued that the purpose of the Special Marina provision is give back liability coverage only.
27 Defendant explained that reason for limiting the Special Marina coverage to liability only is to prevent insurers from having
to defend insureds for every possible disagreement that might arise between the insured and third parties in the scope of the
28 insured's business. According, to Defendant, the Special Marina provision only requires Defendant to indemnify Plaintiff
for actual loss or damage to the property of third parties while in Plaintiff's custody.

United States District Court

For the Northern District of California

limits of liability, exclusions, conditions and other terms of the policy.  Accordingly, the issue becomes whether the Special Marina provision gives back defense coverage for any of Plaintiff's alleged actions.

Plaintiff essentially argues that because the Special Marina provision gives back coverage relating to "property of others held for sale," it provides a potential for defense coverage arising from Plaintiff's alleged act of selling Ramirez's vessels and personal property.  Defendant insists that the Special Marina provision does not apply to these acts because the vessels and personal property were not entrusted to Plaintiff for the "purpose of sale."  Rather, according to Defendant, the Ramirez action alleges that Plaintiff intentionally and unlawfully took possession of the vessels without Ramirez's consent and knowledge.

The Special Marina provision provides, in part,

> 1.    In consideration of the premium and subject to the limits of liability, exclusions, conditions and other terms of the policy, this Company agrees to pay on behalf of the insured, all sums which the insured shall become obligated to pay by reason of the liability imposed upon him (them) by law for loss of or damage to watercraft, their motors, equipment and boat trailers; the property of others while in his (their) care, custody or control at the premises . . . for any of the operations listed below:
>
> . . .
>
> (F)    Property of others held for sale.
>
> . . .

(JSUF, ¶¶ 1, 2; MB000111-MB000113; MB000189-MB000191.)

In this case, an examination of the Ramirez action, the terms of the policy, and the extrinsic evidence contain no indication that Ramirez's vessels and personal property were provided to Plaintiff for the "purpose of sale."  *Montrose*, 6 Cal. 4th at 299-300.  The Special Marina provision provides for coverage for damage to the property of others while the items are in Plaintiff's care, custody, or control for the purpose of sale.  The entire provision is entitled, "Special Marina/Boat Repairers/Boat Dealers Legal Liability."  As the title clearly provides, its purpose is to protect insured marinas, boat repairers, boat dealers for damage to other's vessels that occurs while the vessels are in the insured's custody for repairs and sales.  Because there is no evidence that Ramirez's property was given to Plaintiff for the purpose of sale, and because there is no evidence

15

1    that any damage actually occurred[10] while the vessels were in Plaintiff's custody, there is no

2    potential for coverage under the Special Marina provision.

3        Because the Special Marina provision provides no potential for coverage, the Court need not

4    reach the issue of whether it is an "indemnity only" provision, as Defendant contends.

5        **2.      Form HBDC – "Special Boat Dealer/Marina Coverage"**

6        Next, Plaintiff contends that because the Special Boat Dealer provision provides coverage for

7    "all risk of direct physical loss or damage," Plaintiff's alleged conduct of trespassing and disposing

8    of Ramirez's vessels gives rise to coverage.  Defendant contends that the Special Boat Dealer

9    provision is for first-party property damage only, that it is not a liability policy, and that does not

10   provide a duty to defend against third-party claims.  The Court finds Defendant's argument to be

11   well taken.

12       Property insurance generally provides two types of coverages: first-party coverage and third-

13   party coverage.  "First party" coverages protect against loss or damage sustained by the insured

14   (e.g., fire, theft, disability insurance).  *See Montrose*, 10 Cal. 4th at 663.  Therefore, in "first party"

15   cases, plaintiff is the insured and seeks to recover benefits under the policy payable directly to the

16   insured, not a third party.  *McKinley v. XL Specialty Ins. Co.*, 131 Cal. App. 4th 1572, 1576 (2005).

17   In contrast, "third party" coverages protect the insured against liability to another based on the

18   insured's acts.  *Garvey v. State Farm Fire & Cas. Co.*, 48 Cal. 3d 395, 399 (1989).  In a "third

19   party" case, therefore, an injured party (often referred to as the "third party claimant") is making a

20   claim against the insured, and the insured seeks coverage from the insurer to indemnify and/or

21   defend the third-party lawsuits.  The current case, as explained above, arises from Plaintiff's liability

22   to Ramirez and therefore involves third-party coverage, not first-party coverage.

23       "First party" property insurance coverage is further classified into two types of risks covered:

24   "all risk" and "named peril."  Property insurance issued on an "all risk" basis covers all risks of

25   physical loss excepting excluded perils; and property insurance issued on a "named peril" basis

26   covers physical loss from certain causes only (*e.g.*, fire, windstorm, hail).  Croskey, *supra* § 6:250

27   

28       [10]As alleged in the Ramirez action, the alleged damage occurred from the actual act of Plaintiff selling, disposing, and converting the vessels and personal property.

United States District Court
For the Northern District of California

1  (citing *Garvey v. State Farm Fire & Cas. Co.*, 48 Cal. 3d 395, 406 (1989); and *Julian v. Hartford*

2  *Underwriters Ins. Co.*, 35 Cal. 4th 747, 751 (2005)).  Here, the parties agree that the Special Boat

3  Dealer provision is an "all risks" provision.  (Plaintiff's Motion for Partial Summary Judgment

4  ("Pl.'s Mot.") at 10 fn. 4; Defendant's Opposition to Plaintiff's Motion ("Def.'s Opp.") at 21.)

5          Because the Special Boat Dealer provision is an "all risk" provision, thereby limited to

6  providing "first-party" coverage, it cannot also provide "third-party" coverage as Plaintiff contends.

7  Croskey, *supra* §§ 1:19-21 (explaining that insurance can provide for either "first party" *or* "third

8  party" coverage and explaining differences between the two coverages.) (emphasis added).  Since

9  the Special Boat Dealer provision is a "first party" coverage, it cannot legally create a duty to defend

10  against third-party claims, as would a "third-party" coverage.  The language of the Special Boat

11  Dealer provision clearly establishes that the provision provides for "all risk" "first-party" coverage.

12  The Special Boat Dealer provision provides that, "[t]his policy insures BUSINESS PERSONAL

13  PROPERTY (including Tenant's Improvement and Betterments as provided herein), usual to the

14  conduct of the Insured's business, the property of the Insured or the property of others in the actual

15  or constructive custody of the insured."  (JSUF, ¶¶ 1, 2; MB000175-MB000180, MB000095-

16  MB000100.)  Nowhere does it indicate an intent to provide third-party indemnity coverage.  Because

17  the Special Boat Dealer provision is an "all risk" "first-party" coverage, there can be no duty to

18  defend.  Accordingly, the Court finds that Defendant has no duty to defend under this provision.

19                                    **CONCLUSION**

20          For the foregoing reasons, the Court finds there is no potential for coverage under the policy

21  and **DENIES** Plaintiff's Motion for Summary Judgment.

22

23

24  **IT IS SO ORDERED.**

25

26

27  Dated: April 4, 2007

28                                    MARTIN J. JENKINS
                                      UNITED STATES DISTRICT JUDGE