1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   MATT BUTLER,                         No. C06-03619 MJJ

12           Plaintiff,                   **ORDER GRANTING DEFENDANT'S**
                                          **MOTION FOR SUMMARY JUDGMENT**
13      v.                                **AND DENYING PLAINTIFF'S SECOND**
                                          **MOTION FOR PARTIAL SUMMARY**
14   CLARENDON AMERICA INSURANCE CO.,     **JUDGMENT**

15           Defendant.
     _____/
16

17                          **INTRODUCTION**

18        Before the Court is Defendant Clarendon America Insurance Company's ("Defendant" or

19   "Clarendon") Motion for Summary Judgment.[1]  Plaintiff Matt Butler d.b.a. San Rafael Yacht Harbor

20   ("Plaintiff") opposes Defendant's motion.  Also before the Court is Plaintiff's Second Motion for

21   Partial Summary Judgment.[2]  Defendant opposes Plaintiff's motion.  For the following reasons, the

22   Court **GRANTS** Defendant's Motion for Summary Judgment, and **DENIES** Plaintiff's Second

23   Motion for Partial Summary Judgment.

24              **FACTUAL AND PROCEDURAL BACKGROUND**

25        The instant action presents an insurance dispute between the insured-Plaintiff and the

26   insurer-Defendant arising from Defendant's refusal to defend Plaintiff in an underlying third-party

27   lawsuit.

28
     _____

          [1]Docket No. 62.

          [2]Docket No. 79.

_United States District Court_
_For the Northern District of California_

1

2        On April 4, 2007, this Court denied Plaintiff's Motion for Partial Summary Judgment

3  (hereafter, "First Summary Judgment Order")[3] and found that there was no potential for insurance

4  coverage under the relevant policy provisions, based on the undisputed factual record then before the

5  Court.  As previously set forth in this Court's First Summary Judgment Order, the Court finds the

6  following facts to be undisputed, unless otherwise indicated.

7  **A.**      **The Underlying Action**

8        Plaintiff is the operator of the San Rafael Yacht Harbor in San Rafael, California.  On

9  February 12, 2004, *pro se* litigant Lloyd Victor Ramirez ("Ramirez") filed the first action against

10  Plaintiff in the United States District Court for the Northern District of California, Case No. C04-

11  0593 EMC.  (Joint Statement of Undisputed Fact ("JSUF") at ¶ 4.)  On February 18, 2004, Ramirez

12  filed the second action against Plaintiff in the Superior Court of California, County of Marin, Case

13  No. CV040728.  (*Id*. at 3.)  These actions (collectively "the Ramirez action"), made identical

14  allegations and claims against Plaintiff.  (*Id*. at ¶¶ 3, 4.)[4]

15        Ramirez alleged that he was the owner of two vessels and Plaintiff's tenant at the San Rafael

16  Yacht Harbor.  (*Id*. at ¶¶ 3, 4.)  According to Ramirez, a dispute arose between Ramirez and Plaintiff

17  concerning fees and charges for berthing and other services, and as a result the dispute Ramirez

18  moved his vessels from the San Rafael Yacht Harbor to the Loch Lomond Marina on February 10,

19  2003.  (*Id*.)  In his complaint, Ramirez alleged that on February 18, 2003, Plaintiff "improperly,

20  unlawfully, and without the knowledge and consent and contrary to the desire and instructions of

21  [Ramirez], converted [the two] vessels, trespassed thereon, and sold, disposed or converted them to

22  [Plaintiff's] own use" and that "[Ramirez], was the true and lawful owner of [the] vessels . . . and

23  that [Plaintiff] did not have any legal title to [the] vessels.  (*Id*.)  Ramirez further alleged that

24  Plaintiff "improperly, unlawfully, and without the knowledge and consent of [Ramirez], converted,

25  sold or otherwise disposed of the personal property of [Ramirez], including boat tackle, spare parts

26

27      [3]Docket No. 52.

28      [4]On June 3, 2004, the Court granted Defendants' Motion to Dismiss the first action.  (Case No. 04-0593EMC, Docket No. 29.)

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  and gear, accessories and equipment, and other personal belongings, including but not limited to

2  clothing, and visual equipment and numerous other items." (*Id*.)  According to Ramirez, he

3  sustained injury and damage "by losing his principal place of abode, all to his great physical and

4  emotional distress . . . ." (*Id*.)  Ramirez also alleged that Plaintiff's conduct "was intentional and

5  deceitful with the intention of causing injury to [Ramirez]." (*Id*.)  Ramirez asserted claims for: (1)

6  possession of the vessels and damage for wrongful taking against Plaintiff; and (2) violation of

7  privacy against Pat Lopez ("Lopez") and Loch Lomond Marina for releasing information regarding

8  the location of Ramirez's vessels to Plaintiff.  (*Id*.)[5]

9  **B.      The Policies**

10      Defendant had previously issued two insurance policies to Plaintiff for periods of August 4,

11  2001 to August 4, 2002 and August 4, 2002 to August, 4, 2003.  (collectively, "the policy") (*Id*. at ¶¶

12  1, 2.)  The policy provided coverage for "bodily injury" or "property damage" caused by an

13  "occurrence" which is defined in the policy as an "accident."  The relevant "Commercial General

14  Liability" ("CGL") sections of the policy provided, in part:

15      SECTION I – COVERAGES

16      COVERAGE A.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY

17          1.    Insuring Agreement.
                 a.   We will pay those sums that the insured becomes legally obligated to
18                    pay as damages because of "bodily injury" or "property damage" to
                      which the insurance applies.  We will have the right and duty to
19                    defend any "suit" seeking those damages. . . .
                 b.   This insurance applies to "bodily injury" and "property damage" only
20                    if:
                      (1)   The "bodily injury" or "property damage" is caused by an
21                          "occurrence" that takes place in the "coverage territory," and
                      (2)   The "bodily injury" or "property damage" occurs during the
22                          policy period.
             . . .
23
             2.    Exclusions.
24                 This insurance policy does not apply to:
                 a.   "Bodily injury" or "property damage" expected or intended from the
25                    standpoint of the insured.  This exclusion does not apply to "bodily
                      injury" resulting from the use of reasonable force to protect persons or
26                    property.
27          . . .
28  _____

[5]Neither Pat Lopez or Loch Lomond Marina are insured by Defendant.

SECTION V – DEFINITIONS

3.   "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

. . .

9.   "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

12.  "Property damage" means:
   a.   Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
   b.   Loss of use of tangible property that is not physically injured.  All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

13.  "Suit" means a civil proceeding in which damage because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies are alleged. . . .

(*Id*. at ¶¶ 1 and 2; MB000072-MB000080, MB000157-MB000168.)

The policy contained two additional relevant "special coverage" sections.  First, on the Form HBDC, the policy contained "Special Boat Dealer/Marina Coverage" and provided, in part:

1.   PROPERTY AND INTEREST INSURED:

This policy insures BUSINESS PERSONAL PROPERTY (including Tenant's Improvement and Betterments as provided herein), usual to the conduct of the Insured's business, the property of the Insured or the property of others in the actual or constructive custody of the insured.

. . .

7.   PERILS INSURED:

The property insured is covered against all risk of direct physical loss or damage except as hereinafter excluded.

. . .

21.  PROPERTY OF OTHERS:

In the case of loss or damage to property of others held by the Insured, for which the Insured is liable, the rights to adjust such loss or damage with the owner of the property is reserved to the company, and receipt or release from owner in satisfaction thereof shall be in full satisfaction of any claim of the Insured.  If legal proceeding be taken to enforce a claim against the Insured, to conduct and control the defense on behalf of and in the name of the Insured.  No action of the company in such regard shall increase the liability of the Company under the policy.

4

(*Id*.; MB000095-MB000100, MB000175-MB000180.)  Second, on the Form HMOL, the policy

contained "Special Marina/Boat Repairers/Boat Dealers Legal Liability" and provided, in part:

> 1. In consideration of the premium and subject to the limits of liability, exclusions, conditions and other terms of the policy, this Company agrees to pay on behalf of the insured, all sums which the insured shall become obligated to pay by reason of the liability imposed upon him (them) by law for loss of or damage to watercraft, their motors, equipment and boat trailers; the property of others while in his (their) care, custody or control at the premises . . . for any of the operations listed below:
>
> . . .
>
> (F)     Property of others held for sale.
>
> . . .
>
> 6. This Company agrees to indemnify the Insured to the extent of this policy's proportion of legal costs or fees or expenses of counsel occasioned by the defense of any claim against the Insured for any liability or alleged liability of the Insured covered by this policy, provided that such costs, fees or expenses are incurred with the prior written consent of this Company.  The Company shall have the option of naming attorneys to represent the Insured in the defense of any claim insured hereunder, made against the Insured, and this Company may exercise exclusive direction and control of the said defense. . . .

(*Id*.; MB000111-MB000113, MB000189-MB000191.)

**C.     Plaintiff's Tenders**

On March 10, 2004, Plaintiff first tendered the Ramirez actions to Defendant and requested Defendant to defend and indemnify him.  (*Id*. at ¶ 5.)  In the tender letter, Plaintiff described his participation in the events leading up to the Ramirez actions.  (*Id*.)  Plaintiff explained that Ramirez was often late in paying rent and that in December 2002, Plaintiff hauled Ramirez's vessels from the water for rent amounts owed.  (*Id*.)  According to Plaintiff, in early February 2003 he launched the vessels after Ramirez had written two checks for rent amounts owed.  (*Id*.)  Plaintiff claims that Ramirez's rent checks were returned marked account closed, and that Plaintiff subsequently chained Ramirez's vessels to the dock.  (*Id*.)  Plaintiff explained that he had obtained liens on the vessels and proceeded to notify Ramirez.  (*Id*.)   Plaintiff stated that in mid-February 2003, Ramirez cut the chains and removed one of his vessels to Loch Lomond Marina, approximately 1.5 miles away.  (*Id*.)  Plaintiff proceeded to locate the vessel, return it to San Rafael Yacht Harbor, and haul it from the water.  (*Id*.)  Plaintiff then filed a small claims case for the amounts owed.  (*Id*.)  On April 7, 2003,

1   the small claims court commissioner awarded judgment to Plaintiff and authorized Plaintiff to sell

2   the vessels pursuant to his statutory lien.  (*Id.*)  On March 29, 2004, Defendant's claims adjustor

3   denied Plaintiff's tender of defense and request for indemnity.

4        Plaintiff proceeded to make a series of re-tenders to Defendant regarding the Ramirez action.

5   Plaintiff made a second tender to Defendant in a March 3, 2005 letter.  (Declaration of Barbara Hall

6   ("Hall Decl.") Ex. H.)  On March 10, 2005, Defendant informed Plaintiff there was no change

7   regarding coverage on the Ramirez action, but that Defendant would re-evaluate coverage if an

8   amended complaint was filed. (*Id.* Ex. I.)  On June 14, 2005, Plaintiff made a third tender to

9   Defendant and enclosed a copy of Ramirez's proposed amended complaint.  (*Id.* Ex. J.)  Defendant

10  again informed Plaintiff that there was no change in its position regarding coverage of the Ramirez

11  action.  (*Id.* Ex. K.)  On November 10, 2005, Plaintiff made a fourth tender to Defendant, which was

12  denied on February 21, 2006.  (*Id.* Exs. L, M.)

13  **D.      The Operative Complaint**

14       On March 9, 2006 and December 8, 2006, Plaintiff filed a complaint and an amended

15  complaint, respectively.  Plaintiff brings four claims: (1) Declaratory Relief as to Defendant's

16  obligation to defend and indemnify Plaintiff; (2) Breach of Contract arising from Defendant's refusal

17  to defend and indemnify Plaintiff; (3) Negligence arising from Defendant's refusal to defend and

18  indemnify Plaintiff; (4) Breach of the Implied Covenant of Good Faith and Fair Dealing and Breach

19  of Fiduciary Duty arising from Defendant's failure to defend, to indemnify, to investigate the

20  Ramirez claim, and to act in good faith.

21  **E.      First Summary Judgment Order**

22       In denying Plaintiff's first motion for partial summary judgment, this Court considered three

23  general policy provisions: (1) the CGL Coverage A; (2) the Form HMOL – "Special Marina/Boat

24  Repairers/Boat Dealers Legal Liability" (hereafter, "Special Marina provision"); and (3) the Form

25  HBDC – "Special Boat Dealer/Marina Coverage" (hereafter, "Special Boat Dealer provision").  The

26  Court found that none of these policy provisions triggered Defendant's duty to defend.  First, as to

27  the CGL Coverage A provision, the Court determined that the Ramirez action, and the available

28  extrinsic evidence, presented nothing more than Plaintiff's intentional acts.  Because the GCL

United States District Court
For the Northern District of California

6

Coverage A provision requires an "occurrence" for coverage, and because the policy defines

"occurrence" as an "accident," there was no event triggering Defendant's duty to defend. Second, as

to the Special Marina provision, the Court found that an examination of the Ramirez action, the

terms of the policy, and the extrinsic evidence contained no indication that Ramirez's vessels and

personal property were provided to Plaintiff for the "purpose of sale." Because there was no

evidence that Ramirez's property was given to Plaintiff for the purpose of sale, and because there

was no evidence that any damage actually occurred[6] while the vessels were in Plaintiff's custody,

there was no potential for coverage under the Special Marina provision. Third, as to the Special

Boat Dealer Marina provision, the Court concluded that the Special Boat Dealer provision is an "all

risk" "first party" coverage, it cannot legally create a duty to defend against third-party claims, as

would a "third-party" coverage. For these reasons, the Court denied Plaintiff's motion for partial

summary judgment.

Now before the Court are the parties' cross-motions for summary judgment which consist of

Defendant's Motion for Summary Judgment, and Plaintiff's Second Motion for Partial Summary

Judgment.

### LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if there is

no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the

initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings,

depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence

of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving

party meets this initial burden, the burden then shifts to the non-moving party to present specific

facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324;

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The non-movant's

bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion

---

[6] As alleged in the Ramirez action, the alleged damage occurred from the actual act of Plaintiff selling, disposing, and converting the vessels and personal property.

1   for summary judgment.  *Id.* at 247-48.  An issue of fact is material if, under the substantive law of

2   the case, resolution of the factual dispute might affect the case's outcome.  *Anderson*, 477 U.S. at

3   248.  Factual disputes are genuine if they "properly can be resolved in favor of either party."  *Id.* at

4   250.  Thus, a genuine issue for trial exists if the non-movant presents evidence from which a

5   reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the

6   material issue in his or her favor.  *Id.*  "If the evidence is merely colorable, or is not significantly

7   probative, summary judgment may be granted."  *Id.* at 249-50 (internal citations omitted).

**ANALYSIS**

9       The current dispute in the parties' cross-motions is whether any of the policy provisions

10  creates a potential for coverage thereby triggering a duty to defend.  A short summary of the parties'

11  arguments is as follows.

12      Defendant essentially argues that the Court should grant summary judgment in favor of

13  Defendant as to Plaintiff's first, second, and third causes of action because the Court already found

14  that "there is no potential for coverage under the policy" when it denied Plaintiff's first motion for

15  partial summary judgment.  (First Summary Judgment Order at 17:20.)  According to Defendant,

16  Plaintiff is improperly attempting to re-litigate the same coverage issues.  Defendant also contends

17  that the Court should grant summary judgment in its favor as to Plaintiff's fourth claim because

18  Plaintiff cannot maintain a claim for breach of the implied covenant and breach of fiduciary duty

19  when there is no potential for coverage.  Plaintiff asserts, as best the Court can discern from his

20  papers, that Defendant cannot negate *all* potential bases for coverage under the policy.  Plaintiff

21  presents a series of additional scenarios and policy provisions that allegedly create a potential for

22  coverage thereby triggering a duty to defend.  Before turning to Plaintiff's theories for coverage, it is

23  helpful to briefly set forth the applicable standard governing an insurer's duty to defend under

24  California law.

25  **A.     Duty to Defend**

26      In California, a liability insurer "owes a broad duty to defend its insured against claims that

27  create a potential for indemnity."  *Montrose Chem. Corp. v. Super. Ct.*, 6 Cal. 4th 287, 295 (1993)

28  (quoting *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263 (1966)).  The potential for coverage may arise from

*United States District Court*
For the Northern District of California

8

United States District Court

For the Northern District of California

the underlying complaint[7], the terms of the policy, possible amendments to the complaint, or any other extrinsic evidence known to the insurer which would give rise to liability under the policy, even if coverage is ultimately found lacking.  *Id*. at 295, 299-300; *Gray*, 65 Cal. 2d at 276 (reasoning that facts known to the insurer and extrinsic to the third-party complaint can generate a duty to defend, even though the face of the complaint does not reflect a potential for liability under the policy because pleading rules liberally allow amendment and the third party plaintiff cannot be the arbiter of coverage).  Once the duty to defend attaches, "the insurer is obligated to defend against all of the claims involved in the action, both covered and noncovered."  *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993).  The insurer's duty to defend arises on tender of defense and lasts until it can conclusively show that there is no potential for coverage.  *Montrose*, 6 Cal. 4th at 295.

In the insurance context, summary judgment can often resolve whether the insurer must defend.  *Transamerica Ins. Co. v. Super. Ct.*, 29 Cal. App. 4th 1705, 1712–13 (Cal. Ct. App. 1995) (noting that the issue of an insurer's duty to defend was appropriate for summary adjudication stating, "[t]he question of whether a duty exists under certain circumstances is generally a question of law. [ ]  This is particularly true in the context of insurance and the issue of duty to defend.") (citations omitted).  While either party may move for summary judgment regarding the duty to defend, an insurer is subject to a stricter burden of proof.  *See Montrose Chem. Corp. v. Super. Ct.*, 6 Cal. 4th 287, 300 (1993); *Vann v. Travelers Cos.*, 39 Cal. App. 4th 1610, 1614 (Cal. Ct. App. 1995).  Where the *insurer is the moving party*, it must present undisputed facts that eliminate any possibility of coverage as a matter of law.  *See id.*; *see also Maryland Cas. Co. v. National American Ins. Co. of Calif.*, 48 Cal. App. 4th 1822, 1832 (Cal. Ct. App. 1996).  Where the *insured is the moving party*, he

---

[7]However, in evaluating an underlying third-party complaint, an insured may not trigger the duty to defend by speculating about extraneous "facts" regarding potential liability or ways in which the third party claimant might amend its complaint at some future date." *Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1114 (1995); *Hurley Const. Co. v. State Farm Fire & Cas. Co.*, 10 Cal. App. 4th 533, 538 (1992) (noting that insured's counsel argued that existing complaint for conspiracy might be amended to plead property damage); *Westoil Terminals Co., Inc. v. Industrial Indem. Co.*, 110 Cal. App. 4th 139, 153–54 (2003); *Friedman Professional Mgt. Co., Inc. v. Norcal Mut. Ins. Co.*, 120 Cal. App. 4th 17, 35 (2004) (reasoning that potentiality rule for duty to defend depends on "possibility of actual indemnity coverage, not the mere existence of a plausible argument."); Hon. H. Walter Croskey, *et al.*, *California Practice Guide: Insurance Litigation* § 7:577 (Rutter Guide 2006).

or she has the initial burden of establishing a potential for coverage. *See Montrose*, 6 Cal. 4th at 300; *Vann*, 39 Cal. App. 4th at 1614. Once the insured makes the prima facie showing, the insurer faces the same burden it would encounter if it were the moving party—to prove there is no possibility of coverage. *See id.* "In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot." *Vann*, 39 Cal. App. 4th at 1614.

When the potential for liability depends on a disputed factual question, the very existence of that dispute would establish a possibility of coverage and thus a duty to defend. *See Horace Mann Ins. Co.*, 4 Cal. 4th at 1085. However, when the potential for liability is eliminated by undisputed facts, extrinsic to the complaint, there is no duty to defend. *Montrose*, 6 Cal. 4th at 300–301; *Uhrich*, 109 Cal App. 4th at 611. Similarly, when the potential for liability does not arise from disputed facts but rather "hinge[s] on resolution of a legal question," there is no duty to defend pending the resolution of the question. *A-Mark Fin. Corp. v. CIGNA Prop. & Cas. Cos.*, 34 Cal. App. 4th 1179, 1192 (Cal. Ct. App. 1995). Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor. *Horace Mann Ins., Co.*, 4 Cal. 4th at 1081.

Any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer. *Vann*, 39 Cal. App. 4th at 1615; *Montrose*, 6 Cal. 4th at 299-300. The insurer "has a duty to defend when the policy is ambiguous and the insured would reasonably expect the insurer to defend against the suit based on the nature and kind of risk covered by the policy." *Foster-Gardner, Inc. v. National Union Fire Ins. Co.*, 18 Cal. 4th 857, 869 (Ct. Cal. App. 1998); *Gray*, 65 Cal. 2d at 270; *Uhrich*, 109 Cal. App. 4th at 622. On the other hand, if there is no ambiguity or uncertainty in the coverage provisions, the insured cannot "reasonably" expect a defense. *B & E Convalescent Ctr. v. State Comp. Ins. Fund*, 8 Cal. App. 4th 78, 99-100 (Cal. Ct. App. 1992); *Ananda Church of Self-Realization v. Massachusetts Bay Ins. Co.*, 95 Cal. App. 4th 1273, 1280 (Cal. Ct. App. 2002); *Uhrich*, 109 Cal. App. 4th at 622.

Finally, it is important to note some of the different procedural scenarios that may result from a summary judgment decision on an insured's duty to defend. First, where the *insured successfully* moves for summary judgment that the insurer owes a defense duty, the insurer's duty is clear.

10

United States District Court

For the Northern District of California

*Montrose*, 6 Cal. 4th at 301.  Second, where the *insurer successfully* moves for summary judgment that it owes no duty to defend, the absence of a duty is clear.  *Id*.  Third, where the *insured unsuccessfully* moves for summary judgment, such an unfavorable ruling on the insured's motion does not establish the absence of a duty to defend; rather, it merely means that the question whether the insurer must defend is not susceptible of resolution by the undisputed factual record then before the court.  *Id*.  This final scenario represents the procedural posture of the current action because in denying Plaintiff's first motion for partial summary judgment, the Court determined that Plaintiff had failed to establish a potential for coverage on the then-existing factual record.

**B.      Second Motion for Partial Summary Judgment**

At the outset, the Court finds that Plaintiff's second motion raises substantially the same issue—that is whether there is potential for coverage under the policy.  Defendant insists that because Plaintiff could have raised these new factual scenarios and coverage theories in his first motion for partial summary judgment, it is improper for Plaintiff to raise them now.  Plaintiff does not explain why he could not have presented his current arguments within his first motion for partial summary judgment.  However, because the second motion raises additional scenarios and policy provisions that might give rise to a potential for coverage, the Court finds it appropriate to consider Plaintiff's second motion for partial summary judgment.  *Alioto v. United States*, 593 F. Supp. 1402, 1415 (N.D. Cal. 1984) (allowing second motion where party presented new evidence.).

The Court now addresses Plaintiff's current coverage theories in turn.

**C.      Do Plaintiff's New Factual Scenarios and Cited Policy Provisions Create a Potential for Coverage?**

In his briefing, Plaintiff asserts four new factual scenarios and a number of policy provisions that allegedly create a potential for coverage.  The four new factual scenarios identified by Plaintiff are: (1) "that Tim Leary ("Leary") took the propeller from [Ramirez's] vessel while [the vessel] was hauled out and stored on land at the San Rafael Yacht Harbor [ ] in Mr. Butler's 'care, custody and control'"; (2) "that someone other than Mr. Ramirez and Mr. Butler destroyed a 'hatch-latch' on one of the vessels while [vessel] was berthed at the San Rafael Yacht Harbor [ ] in Mr. Butler's 'care, custody and control'"; (3) "that someone other than Mr. Butler put a hose with water running through

11

1  it in [Ramirez's vessel] while [the vessel] was berthed at the San Rafael Yacht Harbor [ ] in Mr.

2  Butler's 'care, custody and control" that led to damage by flooding of the interior of the vessel"; and

3  (4) "that Mr. Ramirez claimed there was damage to the paint on [his vessel] [ ], and that Mr.

4  Ramirez grounded [his] vessel while removing [the vessel] from the San Rafael Yacht Harbor and

5  requested a tow, and that Mr. Butler towed [the vessel] back to the San Rafael Yacht Harbor with his

6  insured towboat (potentially damaging the [ ] vessel en route)."  (Pl.'s Second Mot. Part. Summ. J. at

7  2:5-19.)  Relying on these scenarios, Plaintiff then cites generally to five policy provisions that

8  allegedly give rise to a potential for coverage.  Plaintiff points to "Coverage Section I (including

9  Form HPBF), Coverage Section II (including CGL Coverage A, CGL Coverage B), Coverage

10  Section V (including Form HBDC), Coverage Section VI (including Forms HPIL and HTOW), and

11  Coverage Section VII (including Form HMOL)."  (*Id*. at 17:20 n.18.)

12      Plaintiff's briefing on this issue is insufficient for a number of reasons.  First, Plaintiff's

13  briefing is void of evidentiary citations to the portions of the factual record that would properly

14  establish the existence of the four new factual scenarios.  Second, Plaintiff's briefing omits

15  explanation on how these new factual scenarios give rise to a potential for coverage under the cited

16  policy provisions.  In the insurance context, Plaintiff bears the initial burden of establishing a

17  potential for coverage.  *See Montrose*, 6 Cal. 4th at 300; *Vann*, 39 Cal. App. 4th at 1614.  Moreover,

18  as the moving party in his second motion for partial summary judgment, Plaintiff also bears the

19  initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings,

20  depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence

21  of a triable issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  The Court itself is not required to

22  "mine the full record for triable issues of fact."  *See e.g., Schneider v. TRW, Inc*., 938 F.2d 986,

23  990-91 n. 2 (9th Cir. 1991). Plaintiff's general reference to a list of policy provisions within his brief

24  is insufficient for this Court to find that a potential for coverage exists as a matter of law.

25  Consequently, at the hearing on this matter, the Court provided Plaintiff's counsel with an

26  opportunity to specifically identify: (1) the evidentiary citations supporting Plaintiff's new factual

27  assertions; and (2) the specific policy provisions that create a potential for coverage.  Plaintiff's

28  counsel's responses are as follows.

**United States District Court**
For the Northern District of California

### 1.      Evidentiary Support for Plaintiff's New Factual Scenarios

In response to the Court's inquiry during oral argument, Plaintiff's counsel asserted that the following portions of the record support the existence of Plaintiff's four new factual scenarios.

First, as to Leary's alleged removal of the propeller from Ramirez's vessel, Plaintiff's counsel cited to Plaintiff's March 10, 2004 tender letter, (JSUF ¶ 5, Ex. E); Ramirez's Responses to Plaintiff's Form Interrogatories, (Declaration of George Nowell ("Nowell Decl.") at ¶ 9, Ex. B); and the Declaration of Matt Butler, ("Butler Decl." ¶ 8.)  However, upon review of Plaintiff's citations, none of these documents competently establishes that Leary was the individual who removed Ramirez's propeller.  For example, the March 10, 2004 tender letter only mentions Leary as someone who received a bad check after working on Ramirez's vessels, nothing more.  (JSUF ¶ 5, Ex. E, MB000203.)  Additionally, contrary to Plaintiff's factual assertion, Ramirez's Form Interrogatory Responses actually identify "Mr. Butler"—and not Leary—as the individual who *took* the propeller from Ramirez's vessel (Nowell Decl. at ¶ 9, Ex. B, MB000298.)  The interrogatory responses only refer to Leary as someone who repaired Ramirez's vessel by placing a new propeller on it.  (*Id.*, MB000297-MB000298); *See also* (*Id.* at ¶ 11, Ex. D, MB000324) (also stating that "Mr. Butler removed the propeller" from Ramirez's vessel.).  The only evidence that Leary may have taken the propeller comes from Plaintiff's own declaration where he states that "he believes" that Leary took it.  (Butler Decl. ¶ 8.)  In liberally interpreting Plaintiff's declaration and resolving doubt in favor of the insured, the Court finds that at a minimum, these documents may create a question of fact as to the identify of the person who allegedly took the propeller.  For this reason, the Court will consider whether this disputed factual scenario creates a potential for coverage under the new policy provisions.

Second, as to whether someone other than Ramirez or Plaintiff destroyed a "hatch-latch" on one of Ramirez's vessels, Plaintiff's counsel cited to two pictures from the Declaration of George Nowell depicting a broken vessel latch.  (Nowell Decl. ¶ 20, Ex. M, MB000439-MB000440.)  While the pictures have a tendency to prove that this vessel had a broken latch, the pictures do not have any tendency to prove the identity of the individual responsible for breaking it.  To the contrary, the available evidence suggests that Plaintiff was the person responsible for the "damage" to Ramirez's

1  personal property.  (JSUF ¶¶ 3, 4, Exs. C, D) (identifying Plaintiff by name as responsible for

2  damage to Ramirez's personal property).  For these reasons, the Court finds a lack of competent

3  evidentiary support for this factual scenario.

4        Third, as to whether someone other than Plaintiff put a hose with water running into

5  Ramirez's vessel, Plaintiff's counsel did not provide the Court with a factual citation to the record.

6  Because the Court is not required to mine the record for Plaintiff on a motion for summary

7  judgment, the Court finds a lack of competent evidentiary support for this factual scenario as well.

8        Fourth, as to whether Ramirez claimed damage to the paint on his vessel resulting from

9  Plaintiff towing the vessel back to the San Rafael Yacht Harbor with Plaintiff's insured towboat at

10  Ramirez's request—with Plaintiff's insured towboat, Plaintiff's counsel cited to Plaintiff's March

11  10, 2004 tender letter, (JSUF ¶ 5, Ex. E), and paragraphs 23 and 24 of Ramirez's Proposed Amended

12  Complaint against Plaintiff in the Superior Court of California, County of Marin, Case No.

13  CV040728, (Nowell Decl. ¶ 11, Ex. D).  Upon review of Plaintiff's citations neither of these

14  documents are competent evidence to create an issue about whether Plaintiff damaged Ramirez's

15  vessel during a return-tow to the San Rafael Yacht Harbor.  Plaintiff's citations simply do not

16  address this factual scenario.

17        In conclusion, the Court finds that the only new factual scenario with evidentiary support in

18  the record is the first scenario—the disputed identity of the individual who took Ramirez's propeller.

19  Accordingly, the Court must determine whether there is a potential for liability arising from this

20  disputed factual issue.  *See Horace Mann Ins. Co.*, 4 Cal. 4th at 1085.  If there is a potential for

21  liability flowing from this disputed factual issue, then Defendant has a duty to defend.  The Court

22  now turns to the specific policy provisions identified by Plaintiff's counsel to determine whether the

23  first factual scenario creates a potential for coverage.

24        **2.**     **Plaintiff's New Policy Provisions**

25        In response to the Court's policy provision inquiry at the hearing, Plaintiff's counsel

26  identified the following provisions to support a potential for coverage.

27        **a.**     **CGL Coverage A**

28        Plaintiff's counsel identified CGL Coverage A (hereafter, "Coverage A").  (JSUF at ¶¶ 1, 2.;

MB000072-MB000075, MB000157-MB000159.)  Plaintiff argues that the factual dispute over Leary's removal of the propeller is an "unexpected, unforeseen or undesigned happening from a known or unknown cause," and therefore an "accident" under Coverage A's insuring agreement. Defendant insists that regardless of whether Leary's actions constituted an "accident," the policy's exclusions preclude coverage.

Insurance policies generally have two parts: (1) the insuring agreement which defines the type of risks covered under the policy; and (2) the exclusions, which remove coverage for certain risks which initially fall within the insuring clause. *Rosen v. Nations Title Ins. Co.*, 56 Cal. App. 4th 1489, 1497, (1997).  Exclusions serve two purposes: They avoid coverage for risks the insurer elects not to insure and limit coverage for risks normally covered by other insurance. *Van Ness v. Blue Cross of California*, 87 Cal. App. 4th 364, 374 (2001).  Most policy forms contain numerous exclusions which limit or take away coverage provided by the insuring clause. Croskey, *supra* § 3:127.  Some exclusions also have related exceptions which "give back" coverage taken away by the exclusion. *St. Paul Fire & Marine Ins. Co. v. Coss*, 80 Cal. 3d 888, 896, (1978).  Thus, the exception's effect is "somewhat analogous to a coverage provision . . . ."  *National Union Fire Ins. Co. v. Lynette C*., 228 Cal. App. 3d 1073, 1082 (1991).  The burden is on the insured to prove the claim is within the basic scope of coverage, whereas the insurer bears the burden of proof on exclusions. *Waller*, 11 Cal 4th at 16.

There are different standards of interpretation for policy exclusions and exceptions.  An exclusion is normally interpreted strictly so that any ambiguity therein will be resolved against the insurer. *Safeco Ins. Co. of America v. Robert S*., 26 Cal. 4th 758, 765–66 (2001).  To be given effect, an exclusion must be "conspicuous and clear."  Croskey, *supra* § 3:139 (citing *North American Bldg. Maintenance, Inc. v. Fireman's Fund Ins. Co.*, 137 Cal. App. 4th 627, 642 (2006)). Exceptions to exclusions are "somewhat analogous to coverage provisions" for purposes of policy interpretation and therefore interpreted broadly in favor of coverage. *See National Union Fire Ins. Co. v. Lynette C*., 228 Cal. App. 3d 1073, 1082 (1991).

As discussed in the First Summary Judgment Order, Coverage A's insuring agreement is triggered by the insured's obligation to pay damages because of "bodily injury" or "property

15

United States District Court

For the Northern District of California

damage" that is caused by an "occurrence." (JSUF ¶¶ 1, 2; MB000072, MB000157.) The policy defines "occurrence" as an "accident." (*Id*.; MB000082, MB000165.) Accordingly, the policy is triggered when an "accident" causes "bodily injury" or "property damage."[8] However, Coverage A also contains a number of exclusions that remove coverage for certain categories of risk. Most relevant in the current case is Coverage A's exclusion for "personal property in the care, custody or control of the insured." (*Id*.; MB000074, MB000159.) Coverage A's exclusion provides, that, "[t]his insurance does not apply to: . . . "Property damage to: . . . Personal property in the care, custody or control of the insured." (*Id*.; MB000074, MB000159.)

Here, an examination of the Ramirez allegations and the extrinsic evidence reveals that the damage claimed by Ramirez occurred with respect to his *personal property* while in the *care, custody or control* of Plaintiff. Ramirez alleged that he was the owner of two vessels and Plaintiff's tenant at the San Rafael Yacht Harbor. (*Id*. at ¶¶ 3, 4.) Ramirez also alleged that Plaintiff "improperly, unlawfully, and without the knowledge and consent and contrary to the desire and instructions of [Ramirez], converted [the two] *vessels*, trespassed thereon, and sold, disposed or converted them to [Plaintiff's] own use" and that "[Ramirez], was the true and lawful owner of [the] *vessels* . . . and that [Plaintiff] did not have any legal title to [the] *vessels*. (*Id*.) (emphasis added). Ramirez further alleged that Plaintiff "improperly, unlawfully, and without the knowledge and consent of [Ramirez], converted, sold or otherwise disposed of the personal property of [Ramirez], including boat tackle, spare parts and gear, accessories and equipment, and other personal belongings, including but not limited to clothing, and visual equipment and numerous other items." (*Id*.) Because the record evinces that Ramirez's vessels were in Plaintiff's care, custody or control,

---

[8]Although the policy does not define the term, "accident," courts have consistently defined the term to require unintentional acts or conduct. *Ray v. Valley Forge* Ins., 77 Cal. App. 4th 1039, 1045 (1999) (citing *Collin v. American Empire Ins. Co.*, 21 Cal. App. 4th 787, 806 (1994); *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal. App. 4th 715, 750 (1993); *Merced Mutual Ins. Co. v. Mendez*, 213 Cal. App. 3d 41, 50 (1989)). The plain meaning of the word "accident" is an event occurring unexpectedly or by chance. *Id*. (citing *St. Paul Fire & Marine Ins. Co.*, 161 Cal. App. at 1202). Whether the insurer or the insured bears the burden of proof as to "intentional injury" versus "accidental injury" is unsettled. Croskey, *supra.*, § 7:247. Some courts have held that where liability is limited to "accidental" occurrences, the insured bears the burden of proving the third party's injury falls within the scope of coverage; *i.e.*, that the injury was neither "expected nor intended" from the standpoint of the insured. *Id*. at § 248 (citing *Royal Globe Ins. Co. v. Whitaker*, 181 Cal. App. 3d 532, 537 (1986)). Other courts have reasoned that "injury expected or intended" is in effect an exclusion upon which the insurer bears the burden of proof. *Id*. at § 249 (citing *Clemco Industries v. Commercial Union Ins. Co.*, 665 F. Supp. 816, 820 (N.D. Cal. 1987); *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1557 (9th Cir. 1991)).

**United States District Court**
For the Northern District of California

1    and because allegedly damaged vessels constitute personal property, *see e.g., Matson Nav. Co. v.*

2    *State Bd. of Equalization*, 136 Cal. App.2d 577, 582-83 (Cal. Dist. Ct. App. 1955), Coverage A's

3    exclusion applies.  Accordingly, Plaintiff cannot establish a potential for coverage under Coverage A

4    on the current record.  The Court now must decide whether any other provisions cited by Plaintiff

5    provide a basis for coverage, or whether there are any exceptions that would "give back" previously

6    excluded coverage.  *Lynette C.*, 228 Cal. App. 3d at 1082.

7                        **b.      Form HPBF – "Package Broad Form Endorsement"**

8             Plaintiff's counsel identified Form HPBF, entitled, "Package Broad Form Endorsement."

9    (hereafter, "Form HPBF").  (JSUF at ¶¶ 1, 2; MB000062-MB000069; MB000149-MB000156.)

10   Plaintiff argues that the Leary factual dispute creates coverage and a duty to defend under Section

11   IV, paragraph E, which is covers, "Property of Others."  (*Id*.; MB000065, MB000152.)  Defendant

12   did not substantively address this provision at the hearing.  Nevertheless, as discussed below, the

13   Court finds that the Form HPBF cannot trigger a duty to defend on the current record.

14            Property insurance generally provides two types of coverages: first-party coverage and third-

15   party coverage.  "First party" coverages protect against loss or damage sustained by the insured

16   (e.g., fire, theft, disability insurance).  *See Montrose*, 10 Cal. 4th at 663.  Therefore, in "first party"

17   cases, plaintiff is the insured and seeks to recover benefits under the policy payable directly to the

18   insured, not a third party.  *McKinley v. XL Specialty Ins. Co.*, 131 Cal. App. 4th 1572, 1576 (2005).

19   In contrast, "third party" coverages protect the insured against liability to another based on the

20   insured's acts.  *Garvey v. State Farm Fire & Cas. Co.*, 48 Cal. 3d 395, 399 (1989).  In a "third

21   party" case, therefore, an injured party (often referred to as the "third party claimant") is making a

22   claim against the insured, and the insured seeks coverage from the insurer to indemnify and/or

23   defend the third-party lawsuits.  The current case, as explained in the First Summary Judgment

24   Order, arises from Plaintiff's liability to Ramirez and therefore involves third-party coverage, rather

25   than first-party coverage.

26            In determining the type of coverage provided by the Form HPBF, it is important to examine

27   the different types of first-party coverage.  "First party" property insurance coverage is classified

28   into two types of risks covered: "all risk" and "named peril."  Property insurance issued on an "all

risk" basis covers all risks of physical loss excepting excluded perils; and property insurance issued on a "named peril" basis covers physical loss from certain causes only (*e.g.*, fire, windstorm, hail). Croskey, *supra* § 6:250 (citing *Garvey v. State Farm Fire & Cas. Co.*, 48 Cal. 3d 395, 406 (1989); and *Julian v. Hartford Underwriters Ins. Co.*, 35 Cal. 4th 747, 751 (2005)).

Here, the Form HPBF insures against "direct physical loss of or damage to Covered Property described in this Form caused by or resulting from any covered loss, unless the loss is excluded . . . ." (JSUF at ¶¶ 1, 2; MB000062, MB000149.)  Because the Form HPBF covers the un-excluded perils identified therein, it is a "first-party" "named perils"  provision, and is thereby limited to providing "first-party" coverage, and not third-party coverage.  Croskey, *supra* §§ 1:19-21 (explaining that insurance can provide for either "first party" *or* "third party" coverage and explaining differences between the two coverages.) (emphasis added).  Also because the Form HPBF is a "first-party" coverage, it cannot legally create a duty to defend against third-party claims, as would a "third-party" coverage.  Nowhere does the Form HPBF indicate an intent to provide a duty to defend "third-party" claims.  For these reasons, the Form HPBF cannot create a duty to defend Plaintiff against Ramirez's third-party claims.

### c.   Form HBDC – "Special Boat Dealer/Marina Coverage"

Third, Plaintiff's counsel identified the Form HBDC, entitled, "Special Boat Dealer/Marina Coverage" (hereafter, "Form HBDC). (JSUF at ¶¶ 1, 2; MB000095-MB000100, MB000175-MB000180.)  Plaintiff previously cited this provision in his First Motion for Summary Judgment. Plaintiff proffers that the Leary factual dispute creates a duty to defend under paragraphs 1 and 21 of the Form HBDC. (*Id*.; MB000095, MB000100, MB000175, MB000180.)  The Court finds Plaintiff's proffer unconvincing because, like the Form HPBF, the Form HBDC is a "first-party" coverage and therefore cannot create a duty to defend on this record.

In this case, the parties have already agreed that the Form HBDC is an "all risks" provision. (Plaintiff's [First] Motion for Partial Summary Judgment ("Pl.'s Mot.") at 10 fn. 4; Defendant's Opposition to Plaintiff's Motion ("Def.'s Opp.") at 21.)  As stated in the First Summary Judgment Order, the Court again finds that because the Form HBDC is an "all risk" provision, it is thereby limited to providing "first-party" coverage, and cannot also provide "third-party" coverage as

United States District Court

For the Northern District of California

1   Plaintiff contends.  Croskey, *supra* §§ 1:19-21.  Since the Form HBDC is a "first party" coverage, it

2   cannot legally create a duty to defend against third-party claims, as would a "third-party" coverage.

3   The language of the Special Boat Dealer provision clearly establishes that the provision provides for

4   "all risk" "first-party" coverage.  The Special Boat Dealer provision provides that, "[t]his policy

5   insures BUSINESS PERSONAL PROPERTY (including Tenant's Improvement and Betterments as

6   provided herein), usual to the conduct of the Insured's business, the property of the Insured or the

7   property of others in the actual or constructive custody of the insured."  (JSUF, ¶¶ 1, 2; MB000175-

8   MB000180, MB000095-MB000100.)  Nowhere does it indicate an intent to provide third-party

9   indemnity coverage.  Because the Special Boat Dealer provision is an "all risk" "first-party"

10  coverage, there can be no duty to defend arising from Ramirez's "third-party" claim.  Accordingly,

11  the Court finds that Defendant has no duty to defend under this provision.

12          **d.     Form HMOL – "Special Marina/Boat Repairers/Boat Dealers Legal
                      Liability"**

13

14          Fourth, Plaintiff's counsel identified the Form HMOL, entitled, "Special Marina/Boat

15  Repairers/Boat Dealers Legal Liability" (hereafter, "Form HMOL").  (JSUF at ¶¶ 1, 2; MB000111-

16  MB000113, MB000189-MB000191.)  Plaintiff previously relied on this provision in his First

17  Motion for Summary Judgment.  Plaintiff claims that the Leary factual dispute creates a duty to

18  defend under paragraph 1 of the Form HMOL.  The Court again finds Plaintiff's coverage theory to

19  be problematic.

20          As the Court stated in the First Summary Judgment Order, the Form HMOL specifically

21  provides that it is "subject to the *limits of liability, exclusions, conditions and other terms of the

22  policy* . . . ."  (*Id*.; MB000111-MB000113, MB000189-MB000191) (emphasis added).  In examining

23  the applicable exclusions in the policy, it is equally apparent that the policy specifically excludes

24  "'property damage' to . . . Personal property in the care, custody or control of the insured[.]" (*Id*. at

25  MB000072-MB000074; M000157-MB000159.)  This exclusion is conspicuously located in bold-

26  faced type beginning on the first page of the CGL provision.  *See National Ins. Underwriters v.

27  Carter*, 17 Cal. 3d 380, 384–85, (1976) (finding an exclusion was "conspicuous" where located in a

28  section of the policy under the bold face heading, "EXCLUSIONS," in print of the same size and

density as the rest of the policy).  Therefore, the Court finds that the Form HMOL provision is subject to the same limits of liability, exclusions, conditions and other terms of the policy.  Because, the policy excludes "'property damage' to . . . Personal property in the care, custody or control of the insured," there is no potential for coverage, and no duty defend, under the Form HMOL.

**e.      Form HPIL – "Protection and Indemnity Liability" and Form HTOW – "Towers Liability Endorsement"**

Fifth, Plaintiff's counsel identified the Form HPIL, entitled, "Protection and Indemnity Liability" (hereafter, "Form HPIL").  (JSUF at ¶¶ 1, 2; MB000105, MB000181.)  Plaintiff's counsel also identified the Form HTOW, entitled, "Towers Liability Endorsement" (hereafter, "Form HTOW").  (*Id*.; MB000188.)  According to Plaintiff, reading these provisions together creates a potential for coverage and a duty to defend.  Defendant did not substantively address these provisions at the hearing.  However, as discussed below, the Court finds that these provision do not trigger a duty to defend on the current record.

The substantive portions of these provisions are as follows.  The Form HPIL provides,

> With respect to vessels insured by this policy and only for liability arising while such vessels are afloat, this policy is extended as provided in the declarations to pay for such sums as the insured, his employees and any other designated persons, shall have become legally liable to pay and shall have paid on account of: . . . [c]osts and expenses, incurred with this Company's approval, of investigating and/or defending any claim or suit against the insured arising out of a liability or an alleged liability of the insured covered above.

(*Id*.; MB000181.)   The Form HTOW provides, that

> In cases where the liability of the Vessel has been contested . . . we will also pay a like proportion of the costs which the Assured shall thereby incur or be compelled to pay.  (Subject also to the limit of liability of the Protection and Indemnity Section).

(*Id*.; MB000188.)

These provisions cannot trigger a duty to defend on this record because there is a lack of sufficient evidentiary support for any factual scenario that could trigger coverage under these provisions.  The only proffered factual scenario that could trigger coverage here would be the fourth scenario regarding Plaintiff's return-tow of Ramirez's vessel.  However, as discussed above, there is

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  a lack of competent evidence to create an issue about whether Plaintiff may have damaged

2  Ramirez's vessel during a return-tow to the San Rafael Yacht Harbor.  Because, there are no facts

3  upon which Defendant could potentially base coverage, the Court finds there is no potential for

4  coverage on the current record.

5      In conclusion, the Court finds that none of these policy provisions creates a potential for

6  coverage on the current record.  The Court now separately addresses Plaintiff's coverage theory

7  under Coverage B of the CGL.

8  **D.      Does Coverage B of the CGL Create a Potential for Coverage?**

9      In his briefs, Plaintiff insists that Coverage B of the CGL (hereafter, "Coverage B") creates a

10  potential for coverage.  Pointing to Coverage B, Plaintiff argues that the factual record evinces a

11  number of covered "offenses" allegedly committed by Plaintiff that resulted in "personal injury,"

12  which is covered under the policy.  More specifically, Plaintiff's theory is that because: (1)

13  Coverage B covers "personal injury" arising from Plaintiff's committed "offenses" of "wrongful

14  eviction," "wrongful entry," and "invasion of the right of private occupancy of a room, dwelling or

15  premises"; and (2) there is a factual dispute as to whether Ramirez lived aboard the vessels, it

16  necessarily follows that a potential for coverage exists by virtue of Plaintiff's alleged "offenses" of

17  "intentionally" evicting Ramirez from, and invading upon, Ramirez's "principal place of abode."[9]

18  Defendant disagrees and insists that the cited offenses are inapplicable to the current factual record.

19  According to Defendant, the three offenses cannot create a potential for coverage because each of

---

20

21      [9]Plaintiff also argues that a potential for coverage exists because Coverage B covers "personal injury" arising from the "offense" of "malicious prosecution."  At the hearing in this matter, Plaintiff's counsel stated that because Ramirez

22  accused Plaintiff of committing "fraud on the small claims court" within Ramirez's form interrogatory responses, there existed a potential for coverage arising from the possibly of a malicious prosecution tort claim against Plaintiff.  (Nowell Decl. ¶ 9, Ex. B, MB000304.)

23      Under California law, to prevail in an action for malicious prosecution, the plaintiff must show: (1) that the defendant caused the initiation of an earlier action, which terminated in favor of the plaintiff; (2) that the defendant had no

24  probable cause for bringing the prior action; and (3) that the defendant acted with malice.  *Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 341 (2004); *Brennan v. Tremco Inc*., 25 Cal. 4th 310, 313 (2001).  The California Supreme Court has stated

25  that malicious prosecution is "a disfavored cause of action" and consequently "the elements of the tort have historically been carefully circumscribed."  *Sheldon Appel Co. v. Albert & Oliver*,  47 Cal. 3d 863, 872 (1989).

26      A review of the Ramirez complaint and the extrinsic evidence does not create a potential for coverage arising from an unpleaded malicious prosecution claim.  Nowhere in his complaints does Ramirez allege a tort for malicious prosecution.

27  Similarly, the extrinsic evidence is insufficient to implicate such a claim on this record.  Because an insured may not trigger the duty to defend by speculating about extraneous  "facts" regarding potential liability or ways in which the third party

28  claimant might amend its complaint at some future date, the Court finds no merit in Plaintiff's malicious prosecution coverage theory.  *See e.g.*, *Gunderson*, 37 Cal. App. 4th at 1114; *Hurley Const. Co*, 10 Cal. App. 4th at 538.

the offenses pertains to torts involving *real property*, not *personal property*, such as the vessels at issue here.

CGL policies generally contain two separate insuring provisions under which an insured may claim coverage.  The first provision in the current case, as discussed in detail in the First Summary Judgment Order, covers all sums which the insured shall become legally obligated to pay as damages because of "bodily injury" caused by an "occurrence" during the policy period.  (JSUF at ¶¶ 1 and 2; MB000072-MB000080, MB000157-MB000168.)  The second provision in the current case, which is at issue in the current motion, covers the insured's liability for damages because of "personal injury" caused by "offenses" committed in the course of the insured's business activities.[10] (*Id.*; MB000075-MB000082, MB000160-MB000167.)  In commenting on this second type of insuring provision, California courts have stated that "[i]n the world of liability insurance, personal injury coverage applies to injury which arises out of the commission of certain enumerated acts or offenses . . . Coverage . . . is triggered by the offense, not the injury or damage which a plaintiff suffers . . . ." *Martin Marietta Corp. v. Insurance Co. of No. America*, 40 Cal. App. 4th 1113, 1124 (Cal. Ct. App. 1995) (citations omitted).

Turning to the "personal injury" provision now before the Court, Coverage B provides,

COVERAGE B.  PERSONAL AND ADVERTISING INJURY LIABILITY

        1.     Insuring Agreement.
                a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance part applies.  We will have the right and duty to defend any "suit" seeking those damages. . . .
                b.     This insurance applies to:
                   (1)     "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you . . .
            . . .

        2.     Exclusions.
            This insurance does not apply to:
                a.     "Personal injury" or "advertising injury:"

                   (3)     Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or

---

[10]The same provision also generally covers "advertising injury liability" and the coverage therefore is commonly referred to as "personal/advertising injury" coverage. Hon. H. Walter Croskey, *et al.*, *California Practice Guide: Insurance Litigation* § 7:1870 (Rutter Guide 2006).

United States District Court
For the Northern District of California

. . .

10.    "Personal injury" means injury other than "bodily injury" arising out of one or more of the following offenses:

. . .

b.    Malicious prosecution;
c.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord, or lessor . . .

(JSUF at ¶¶ 1 and 2; MB000075-MB000082, MB000160-MB000167.)  The Court must now address whether any of the three "offenses" cited by Plaintiff is potentially covered by Coverage B's "personal injury" provision such that Defendant has a duty to defend Plaintiff in the Ramirez action.

### 1.    Does the Ramirez Action Encompass a Claim for Wrongful Eviction, Wrongful Entry, or Invasion of the Right of Private Occupancy Against Plaintiff?

The issue before the Court is whether, under California law, the Ramirez action provides a basis for potential claims of wrongful eviction, wrongful entry, or invasion of a right of occupancy against Plaintiff, thereby triggering Defendant's duty to defend under Coverage B.

In interpreting coverage provisions such as this one, California courts have stated that "[t]o the extent the listed offenses [in the policy] are framed in generic terms, they should be construed broadly to encompass all specific torts which reasonably could fall within the general category." *Fibreboard Corp. v. Hartford Accident & Indemnity Co.*, 16 Cal. App. 4th 492, 515 (Cal. Ct. App. 1993).  However, in construing the particular phrase, "wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy," California courts have found that the phrase applies to tort claims arising out of the interference with an interest in *real property*.  *See e.g.*, *General Accident Ins. Co. v. West American Ins. Co.*, 42 Cal. App. 4th 95, 103 (Cal. Ct. App. 1996) (emphasis added); *Fibreboard Corp.*, 16 Cal. App. 4th at 514-515 (stating "in California the listing 'wrongful entry, eviction and invasions of the right of private occupancy' has been held to pertain to torts against real property as a matter of law"); *Sterling Builders, Inc. v. United Nat. Ins. Co.*, 79 Cal. App. 4th 105, 108 (Cal. Ct. App. 2000) (stating "claims that do not involve the physical occupation of or trespass upon real property are not within the meaning of the phrase [wrongful entry or

23

1  eviction or other invasion of the right of private occupancy], even though the claim may entail

2  interference with rights relating to such property"); *Republic Western Ins. Co. v. Stardust Vacation*

3  *Club*, 2003 WL 24215016 at *5 (E.D. Cal. 2003) ("The 'wrongful eviction' language of CGL

4  policies has been interpreted by the California courts as requiring that the wrongful eviction or entry

5  into, or the invasion of the right of private occupancy, relate to an interest in real property"); *Nichols*

6  *v. Great Am. Ins. Cos.*, 169 Cal. App. 3d 766, 775-76 (Cal. Ct. App. 1985) ("We perceive that the

7  'personal injury' contemplated by the business liability policies was the 'wrongful entry, eviction, or

8  other invasion of the right of private occupancy' relating to some interest in real property.").[11]

9  Accordingly, there is no duty to defend under the wrongful eviction, wrongful entry, or invasion of

10 occupancy personal injury provisions of a CGL policy in the absence of facts from which the

11 underlying third-party plaintiff can assert a claim based on a colorable property interest in the

12 insured's real property.

13        Here, in broadly construing the Ramirez action and the available extrinsic evidence, the

14 Court finds that Ramirez's claims against Plaintiff do not encompass any specific torts which

15 reasonably could fall within the general categories of wrongful eviction, wrongful entry, and

16 invasion of the right of private occupancy.  As noted above, Ramirez alleges that he was the owner

17 of two *vessels* and was Plaintiff's tenant at the San Rafael Yacht Harbor.  (JSUF at ¶¶ 3, 4.)

18 (emphasis added.)  According to Ramirez, a dispute arose between Ramirez and Plaintiff concerning

19 ────────────────────

20        [11]In interpreting the phrase, "wrongful eviction from ... a room, ... a dwelling; or ... a premises," California courts
have stated that,

21        "[u]nder the principle of ejusdem generis, the general word 'premises' should be defined in the same class
        or nature of the more specific words that precede it.  *Mirpad, LLC v. Calif. Ins. Guar. Assoc.*, 132 Cal.

22        App. 4th 1058, 1071 (Ct. Cal. App. 2005) (citing *Waranch v. Gulf Insurance Co.*, 218 Cal. App. 3d 356,
        360-361 (1990) ("private occupancy," when grouped with "wrongful entry" and "wrongful eviction," could

23        only mean occupancy of real property, not a motor vehicle); *Martin Marietta Corp. v. Ins. Co. of North
        Am.*, 40 Cal. App. 4th 1113, 1133 (1995) (the policy term "'[o]ther invasion of the right of private

24        occupancy'" must be read as similar to terms "eviction" and "trespass" appearing in the same coverage
        phrase.)  A "room" is a "a partitioned part of the inside of a building; esp: such a part used as a lodging."

25        A "dwelling" is "a shelter (as a house or building) in which people live."  A "premise" is "a building or part
        of a building usu[ally] with its appurtenances (as grounds)." (Webster's Ninth New Collegiate Dictionary

26        (1986) ¶. 1023, 390, 928.)  Obviously, the word "premises" is the more general of the three terms, but, as
        noted, settled rules of construction compel us to conclude that it is of the same class as the other two.  (*See

27        also Truck Ins. Exchange v. Bennett*, 53 Cal. App. 4th 75, 85-86 (Ct. Cal. App. 1997)).

28 *Mirpad, LLC*, 132 Cal. App. 4th at 1071.

fees and charges for berthing and other services, and as a result the dispute Ramirez elected to move his *vessels* from the San Rafael Yacht Harbor to the Loch Lomond Marina.  (*Id*.) (emphasis added.) In his complaint, Ramirez alleged that Plaintiff "improperly, unlawfully, and without the knowledge and consent and contrary to the desire and instructions of [Ramirez], converted [the two] *vessels*, trespassed thereon, and sold, disposed or converted them to [Plaintiff's] own use" and that "[Ramirez], the true and lawful owner of [the] *vessels* . . . and that [Plaintiff] did not have any legal title to [the] *vessels*.  (*Id*.) (emphasis added.)  Ramirez further alleged that Plaintiff "improperly, unlawfully, and without the knowledge and consent of [Ramirez], converted, sold or otherwise disposed of the *personal property* of [Ramirez], including boat tackle, spare parts and gear, accessories and equipment, and other personal belongings, including but not limited to clothing, and visual equipment and numerous other items."  (*Id*.) (emphasis added.)  According to Ramirez, he sustained injury and damage "by losing his principal place of abode, all to his great physical and emotional distress . . . ."  (*Id*.)  Ramirez also alleged that Plaintiff's conduct "was intentional and deceitful with the intention of causing injury to [Ramirez]."  (*Id*.)  Ramirez asserted claims for: (1) possession of the vessels and damage for wrongful taking against Plaintiff; and (2) violation of privacy against Pat Lopez ("Lopez") and Loch Lomond Marina for releasing information regarding the location of Ramirez's vessels to Plaintiff.  (*Id*.)  Nowhere does Ramirez make allegations against Plaintiff for "wrongful eviction," "wrongful entry," or "invasion of private occupancy."

A review of the available extrinsic evidence also does not evince that the Ramirez action involved any real property claims that encompass wrongful eviction, wrongful entry, or invasion of private occupancy.  For example, in his March 10, 2004 tender letter, Plaintiff described his participation in the events leading up to the Ramirez actions.  (*Id*. at ¶ 5.)  Plaintiff explained that Ramirez was often late in paying rent and that in December 2002, Plaintiff hauled Ramirez's vessels from the water for rent amounts owed.  (*Id*.)  According to Plaintiff, in early February 2003 he launched the vessels after Ramirez had written two checks for rent amounts owed.  (*Id*.)  Plaintiff explained that Ramirez's rent checks were returned marked account closed, and that Plaintiff subsequently chained Ramirez's vessels to the dock.  (*Id*.)  Plaintiff explained that he had obtained liens on the vessels and proceeded to notify Ramirez.  (*Id*.)   Plaintiff stated that in mid-February

1    2003, Ramirez cut the chains and removed one of his vessels to Loch Lomond Marina,

2    approximately 1.5 miles away.  (*Id.*)  Plaintiff proceeded to locate the vessel, return it to San Rafael

3    Yacht Harbor, and haul it from the water.  (*Id.*)  Plaintiff then filed a small claims case for the

4    amounts owed.  Nowhere in this letter, or any of the other extrinsic evidence, does Plaintiff's

5    conduct encompass any specific real property torts which reasonably could fall within the general

6    categories of wrongful eviction, wrongful entry, and invasion of the right of private occupancy.  For

7    this reason, the Court finds that there is no potential for coverage on the undisputed record before the

8    Court.

9           **2.     Ramirez's Rented Marina Slip Constituted Real Property, But His Vessels
                     Constituted Personal Property.**

10

11          In his reply brief, Plaintiff argues that Defendant's real property distinction does not

12   foreclose a potential for coverage.  Plaintiff maintains that California courts have stated that a

13   marina slip is within recognized definitions of "real property" citing *Smith v. Mun. Ct.*, 202 Cal.

14   App. 3d 685, 689 (Cal. Ct. App. 1988) and *Pelletier v. Alameda Yacht Harbor*, 188 Cal. App. 3d

15   1551, 1557-58 (Cal. Ct. App. 1986).

16          In *Smith*, the lessee of a boat slip in a marina responded to the marina's unlawful detainer

17   action by filing a motion to quash.  *Smith*, 202 Cal. App. 3d at 686.  At issue was the property

18   interests in the actual boat slip, not the vessel itself.  *Id.*  The lessee based the motion to quash on the

19   ground that the unlawful detainer action did not involve real property and thus the municipal court's

20   jurisdiction could not be invoked by the summons.  *Id.*  There, the court held that the actual boat slip

21   in a marina was "real property" for purposes of an unlawful detainer action.  *Id.*  In distinguishing

22   between the personal property interests in the vessel and the real property interests in the slip, the

23   court explained that,

24          [The lessee] has charted the wrong course.  The issue is not whether the
             vessel is real property because it is tied to a land-based wharf, but
25          whether the rental of the space on the water is a rental of real property.
             The term "real property" is defined at several places in the Code of
26          Civil Procedure. [California] Code of Civil Procedure section 17
             defines the term as "coextensive with lands, tenements, and
27          hereditaments." [California] Code of Civil Procedure sections 481.203
             and 680.320 define the term to "[include] any right in real property,
28          including, but not limited to, a leasehold interest in real property."  The
             [California] Civil Code is more explicit. "Property is either: [¶] 1. Real

26

**United States District Court**
For the Northern District of California

1           or immovable; or, [¶] 2. Personal or movable." (Cal. Civ. Code, § 657;

2           *see also* Cal. Civ. Proc. Code, §§ 481.195, 680.310.)  Property is
defined as "the thing of which there may be ownership" (Civ. Code, §

3           654) – thus, if something can be owned and cannot be moved, like the
surface of a body of navigable water, it constitutes "real property."

4  *Id*. at 689.  Consequently, the court reasoned that the lessee's leasehold interest in his boat slip was

5  an interest in real property, therefore subject to unlawful detainer.  *Id.*

6       In *Pelletier*, the lessees brought an action against a yacht harbor for negligence and

7  retaliatory eviction.  *Pelletier*, 188 Cal. App. 3d at 1553.  The trial court dismissed the cause of

8  action for retaliatory eviction on the basis of the collateral estoppel effect of a stipulated judgment

9  between the parties in a previous unlawful detainer proceeding, and rendered judgment for the yacht

10  harbor

11  owner on the ground that an exculpation clause in the lease agreement signed by the parties absolved

12  it of liability for negligence.  *Id*. at 1554.  The appellate court reversed finding that the exculpation

13  clause was void under California Civil Code section 1668 (unlawful contracts), as involving the

14  public interest and that the stipulated judgment had no preclusive effect since it had made no

15  mention of a relinquishment by the yacht owners of claims arising from a retaliatory eviction.  *Id*. at

16  1554-55.

17       Having reviewed *Smith* and *Pelletier*, the Court finds that neither decision supports

18  Plaintiff's argument.  As the *Smith* court noted, the legal distinction between a vessel's status as

19  personal property and a rented marina slip's status as real property is similarly pertinent here.  A

20  review of Ramirez's allegations and the available extrinsic evidence indicates that Ramirez's claims

21  are particular to his *personal property* interests in his vessels, and not his *real property* interests in

22  actual slip at the San Rafael Yacht Harbor.  Accordingly, Plaintiff's arguments pertaining to the

23  ownership and personal property interests in the actual vessels are unavailing.  Similarly, in

24  *Pelletier*, while the court recognized the possibility of an unlawful detainer action arising from a real

25  property interest in marina berth, it did not otherwise permit this Court to broadly construe the

26  Ramirez action as one arising from real property interests.  Plaintiff has failed to provide the Court

27  with applicable legal authority that would permit such an overly broad interpretation of the Ramirez

28  action.  To the contrary, the Court finds that the available California legal authority counsels against

United States District Court

For the Northern District of California

1   such a broad reading of Ramirez's allegations.  As noted above, the underlying Ramirez action

2   arises from Plaintiff's interference with Ramirez's *personal property* interest in the vessels at issue,

3   not from Plaintiff's interference with Ramirez's *real property* interest in the actual boat slip.

4        For these reasons, the Court finds that Defendant does not have a duty to defend Plaintiff

5   under Coverage B.  Because the Court finds that Plaintiff has failed to establish a potential for

6   coverage, the Court accordingly **DENIES** Plaintiff's Motion for Partial Summary Judgment as to

7   Plaintiff's first, second, and third causes of action.

8   **D.      Breach of the Implied Covenant and Breach of Fiduciary Duty**

9        Plaintiff's fourth cause of action contains two counts against Defendant: (1) Breach of the

10  Implied Covenant of Good Faith and Fair Dealing; and (2) Breach of Fiduciary Duty, both arising

11  from Defendant's failure to defend, to indemnify, to investigate, and to act in good faith with respect

12  to the Ramirez claim.  In his motion for partial summary judgment, Plaintiff generally contends that

13  Defendant failed  to investigate the Ramirez claim.  Defendant contends that because there is no

14  coverage, Plaintiff's fourth cause of action fails as a matter of law.

15       The California Supreme Court has stated that,

16            [t]he insurer-insured relationship . . . is not a true "fiduciary
             relationship" in the same sense as the relationship between trustee and
17            beneficiary, or attorney and client.  It is, rather, a relationship often
             characterized by unequal bargaining power in which the insured must
18            depend on the good faith and performance of the insurer.  This
             characteristic has led the courts to impose "special and heightened"
19            duties, but "[w]hile these 'special' duties are akin to, and often
             resemble, duties which are also owed by fiduciaries, the fiduciary-like
20            duties arise because of the unique nature of the insurance contract, not
             because the insurer is a fiduciary."

21
22  *Tran v. Farmers Group Inc*., 104 Cal. App. 4th 1202, 1212 (Ct. Cal. App. 2002) (citing *Vu v.*

23  *Prudential Prop. & Casualty Ins. Co.*, 26 Cal.4th 1142, 1150-1151 (2001); *see also* Croskey, *supra*,

24  § 11:146 *et seq*.  Accordingly, the sounder approach is for courts to analyze an insurer's alleged

25  breach of its "fiduciary-like duties" as a claim for breach of the covenant of good faith and fair

26  dealing.  *Id*.

27       The implied covenant of good faith and fair dealing obligates a liability insurer to: (1)

28

United States District Court

For the Northern District of California

1   investigate[12] third party claims against its insured objectively and reasonably; (2) undertake the

2   insured's defense in good faith if there exists a potential for coverage; and (3) effect reasonable

3   settlements of third party claims within policy limits on a timely basis.  *See e.g.*, *Comunale v.*

4   *Traders & Gen. Ins. Co.*, 50 Cal. 2d 654, 658 (1958); *Crisci v. Security Ins. Co. of New Haven,*

5   *Conn.*, 66 Cal. 2d 425, 431 (1967); *Betts v. Allstate Ins. Co.*, 154 Cal. App. 3d 688, 705–07 (Ct. Cal.

6   App. 1984).  However, there are limits to the application of the implied covenant of good faith and

7   fair dealing.  Where there is *no actual* coverage under the policy, there can be no action for breach

8   of the implied covenant of good faith and fair dealing because the covenant is based on the

9   contractual relationship between the insured and the insurer.  *Waller.*, 11 Cal. 4th at 36 (emphasis

10  added).  Additionally, where there is *no potential* for coverage under the policy, there can similarly

11  be no action for breach of the implied covenant of good faith and fair dealing. When an insured

12  submits a claim to an insurer and there is no potential for coverage, the insurer has no duty to defend

13  and it may reasonably deny the claim.  *R & B Auto Ctr., Inc. v. Farmers Group, Inc*., 140 Cal. App.

14  4th 327, 353 (2006); *see also Waller*, 11 Cal. 4th at 36.

15       At the hearing in this matter, Plaintiff's counsel conceded that, under California law, Plaintiff

16  could not sustain his fourth cause of action absent a potential for coverage under the policy.

17  However, Plaintiff's counsel argued that under federal admiralty law, Plaintiff could sustain his

18  fourth cause of action because under federal admiralty law, an insurer's underlying duties exist

19  regardless of whether there is a potential for coverage under the policy.  Plaintiff's counsel conceded

20  that there was no legal authority permitting this Court to import federal admiralty law into Plaintiff's

21  current California tort claim.  Absent any citation to legal authority, the Court declines Plaintiff's

22  invitation to find a duty to defend under federal admiralty law on the current record.

23

24       [12]An insurer is required to investigate all claims promptly. Cal. Ins. Code § 790.03(h)(3).  "The risk that an insurer
     takes when it denies coverage without investigation is that the insured may later be able to prove that a reasonable
25   investigation would have uncovered evidence to establish coverage or a potential for coverage . . . In that case, the insurer
     will be liable for the costs of defense already incurred by the insured . . . and could also be exposed to tort liability." Croskey,
26   *et. al.*, *supra*, at § 7:587 (citing *Am. Int'l Bank v. Fidelity & Dep. Co.*, 49 Cal. App. 4th 1558, 1571 (1996); *Eigner v.*
     *Worthington*, 57 Cal. App. 4th 188, 195 (1997)).  Additionally, there is no duty to defend where there is no potential
27   coverage. *Id.*  If the insurer concludes after an appropriate investigation that there is no potential coverage under its policy,
     it may properly refuse to defend the third party's action against its insured. *Id.* (citing  *Montrose*, 6 Cal 4th at 298–99).
28   Finally, there is no duty to investigate claims that are clearly excluded under the policy. *Id.* (citing *Continental Cas. Co. v.*
     *City of Richmond*, 763 F.2d 1076, 1083–84  (9th Cir. 1985)(applying California law.).

**United States District Court**
For the Northern District of California

1    Accordingly, the Court finds that neither the Ramirez action or the available extrinsic facts

2   create a potential for coverage under the policy.  And because there is no potential for coverage

3   under the policy, Plaintiff may not maintain his fourth cause of action for breach of the implied

4   covenant of good faith and fair dealing against Defendant.  For this reason, the Court **DENIES**

5   Plaintiff's Motion for Partial Summary Judgment as to Plaintiff's fourth cause of action.

6   **E.      Did Defendant Breach its Duty of *Uberrimae Fidei*?**

7    Plaintiff makes an additional argument as to the fourth cause of action.  Plaintiff posits that

8   Defendant failed to act with *uberrimae fidei* in the handling of Plaintiff's claim.  Specifically,

9   Plaintiff accuses Defendant of taking an unreasonably narrow view of the Ramirez allegations and

10   an unreasonably negative view of Plaintiff's March 10, 2004 tender letter.  Additionally, Plaintiff

11   claims that Defendant failed to investigate the potential for coverage by refusing to inform itself of

12   the discovery in the Ramirez action.  Defendant does not substantively respond to Plaintiff's

13   *uberrimae fidei* argument, however Defendant generally contends that because there is no coverage,

14   Plaintiff's fourth cause of action fails as a matter of law.

15    The principle, known as *uberrimae fidei* exists under both California insurance law and

16   federal admiralty law.  *CIGNA Prop. & Cas. Ins. Co. v. Polaris Pictures Corp.*,159 F.3d 412, 420,

17   fn. 3 (9th Cir. 1998) (citing Cal. Ins. Code § 1900; *Pacific Queen Fisheries v. Symes*, 307 F.2d 700,

18   708 (9th Cir. 1962)).  Under this principal, "[i]n marine insurance, each party is bound to

19   communicate . . . (a) All the information which he possesses and which is material to the risk . . . (b)

20   The exact and whole truth in relation to all matters that he represents or, upon inquiry assumes to

21   disclose."  Cal. Ins. Code § 1900.  If a representation by the insured is intentionally false in any

22   respect, whether material or immaterial, the insurer may rescind the entire contract."  Cal. Ins. Code

23   § 1904.  It is said that Section 1900 imposes upon the insured a duty of "uttermost good faith" in

24   disclosures to the insurer: "(T)he insured is bound, even if not asked, to reveal every fact within

25   his/her knowledge that is material to the risk."  *Certain Underwriters at Lloyd's v. Montford*, 52 F.3d

26   219, 222 (9th Cir. 1995) (applying California law.).

27    Turning to the instant case, Plaintiff has failed to explain how the current factual record

28   implicates the principle of *uberrimae fidei* and an insurer's related right to rescind a maritime

United States District Court

For the Northern District of California

1   insurance contract.  This is not a case under which the insurer has claimed that the insured

2   intentionally misrepresented certain facts or failed to disclose certain facts material to the risk.  For

3   this reason, the Court finds Plaintiff's reliance on the principle of *uberrimae fidei* to be

4   unconvincing.

5                                        **CONCLUSION**

6          In the current case, this Court has considered two motions for partial summary judgment

7   filed by Plaintiff and one motion for summary judgment filed by Defendant.  In analyzing the

8   parties' arguments and the policy at issue, this Court has determined that none of the cited policy

9   provisions creates a potential for coverage.  Additionally, in considering the Ramirez action and the

10  available extrinsic evidence in light of the relevant policy provisions, this Court finds that Defendant

11  has met its burden of establishing that Plaintiff's claims cannot fall within policy coverage on the

12  current factual record.

13         For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment,

14  and **DENIES** Plaintiff's Second Motion for Partial Summary Judgment.

15

16  **IT IS SO ORDERED.**

17

18  Dated: June 29, 2007                                    _____
                                                            MARTIN J. JENKINS
19                                                          UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28

                                                31